THOMPSON, J.,
delivered the opinion of the court-:
In the petition of appeal four errors are assigned to the decree appealed from, as furnishing grounds for reversal:
1st. Por bringing on the cause to a hearing without the consent of the defendants, when it had not been set at rules.
2d. Por declaring the legacy of the residue to the children of B. B. Heath to be vested, and decreeing a portion of it (the slaves) to be delivered up to their guardian.
3d. Because he (the petitioner) was decreed and ordered to deliver up the slaves in the d.ecree mentioned, without any account of his transactions as administrator, and without any thing appearing in the case to show the state of his accounts with the estate.
4th. Because there was error in the decree in prescribing the condition of the bond required of Collier for the forthcoming and delivery of the slaves, in the contingency of neither of the children of B. B. Heath attaining the age of twenty-one years, and which obliges him, in that event, to deliver them to “the children of A. H. Raney and A. R. Bee and Barbary his wife;” there being no such class of persons as the children of A. H. Raney provided for in the will of R. H. Heath, and it being manifestly to, the prejudice of their rights, (.the petitioners’), under the will, that property should be ordered in the contingency in which their rights, or the rights of some of them, became vested. *to be delivered to such persons, and not to such of themselves, as may be entitled thereto.
1. Upon the first point, the premature hearing of the cause, the case of Poling v. Johnson, -2 Rob. 2SS, was cited, and relied on by the counsel on both sides. In that case, it appeared from the record that the answer and replication were filed at the August rules, 1840; at September rules, 1840, the plaintiff set the cause for hearing; and on the 5th October, 1840, the cause was heard upon bill, answer, replication, depositions, exhibits aqd arguments of counsel, and a decree rendered against the defendant. Held: As the law then stood, the case being governed by the act of the 17th February, 1823, (Sess. Acts of"1822-23, p. 39, ch. 37, l 1; Sup. Revised Code, p. 129,) neither party had the .right, without the consent of the other, until the expiration of four months, to set the cause for hearing; that the case was prematurely set for hearing and prematurely heard, and for that cause the decree was reversed. I presume, the counsel for the appellees cited the case as authority for the principle, that express consent or waiver of objection on the record was not necessary to cure the error of a premature sitting or hearing of the cause, but that it might be properly implied .by the court,, where no objection appears ' in the record to be taken to the irregularity, • and where it appears on the record the defendant, appeared,at the hearing in person or by counsel. The counsel for the appellants, without adverting, as I •suppose, to the change in the law introduced by the act of the 20th March, 1847, relied on this case as an express authority-in his favor upon this point. How far that case would have ruled this, had the law remained the same, is at least questionable; because, admitting the case to be alike or identical, as to the absence or nonappearance of consent, either, express or implied, they might well be held so unlike in other respects, as to render the act of 1829, Supplement to Code, p. 125, applicable and sufficiently operative in this cause to cure the irregularity, whilst properly held inapplicable *and insufficient for that purpose in that case. But be that as it may, it seems to me very clear the change in the law takes this case without the influence of that decision.
In this case two of the subpoenas are dated the 15th March, 1849, returnable to the first day of the next April term; a third one issued the 16th April, returnable to the May rules. The bill was filed the 5th April, the answer of Raney and replication thereto the 2d July, 1849. The cause was heard the 6th October thereafter, three months and three days after issue was joined on the answer. After two 'months the cause -could have been set for hearing. See act of 20th March, 1847,.Ses-sion Acts 1846-7, p. 66. The rules are not ■copied into the record, but as the plaintiff had a right to set the cause for hearing at September rules, 1849, as there is nothing in the record to shew that it had not been •done, as the decree states that the cause was heard on the bill, answers, exhibits, and was argued by counsel, (without objection,) I think it not unreasonable to presume, not ,only that it was set for hearing at the rules, but heard by consent. The nature of the case stated in both bill and answer strengthens the. presumption. In a case involving issues of fact, as well as of law, and the necessity of taking depositions, as was the case in 2 Rob. before referred to, inferable from the fact that depositions were taken and read upon the hearing, it might be impropér, as the court then decided, to deprive a party of the time allowed by law for taking testimony after answer and replication, without consent, express or implied; whilst a case like this, where the privilege of time given by the statute is merely matter of form, and the emptiest form imaginable, might render a very different decision proper. It is most manifest that the whole and sole object of this suit, according to both bill and answer, was to elicit a judicial construction of the will, and to obtain the relief consequent upon such construction. There was no issue of fact made, and no depositions to be taken. A sheer ^question of law, arising upon the construction of the will, was all. It does seem to me, therefore, that here is a case in which we may, and in which we ought to presume that it was heard by consent, either expressly given, or- without objection, which, in a *725 case like this, ought to be regarded as tantamount. But, conceding it had not been set for hearing, nor heard bj' consent, the objection on that account, in such a case as this, being purely technical, the irregularity is cured by the act of 1829, Suppl. to the Revised Code, p. 125, l 81, which, among other provisions, enacts as follows: ‘Nor shall any decree of any court of equity be reversed for informality in the proceedings, where the parties have proceeded to take their depositions and it appears to the court that there has been a full and fair hearing upon the merits, and that substantial justice has been done between the parties.” Now, as in this case no question of fact arose, and no necessity for or propriety in taking depositions on either side existed, it certainly falls within the equity and spirit of the law, if not the very letter.
2. The second of the errors assigned presents the main question in the cause— the one of most importance to the parties, and most interesting to the legal profession on account of its novelty; for it seems never to have been adjudicated by the court of last resort in Virginia, if it has ever arisen and been passed upon by any of the subordinate tribunals — and that question is, Did the bequest to Benj. B. Heath’s children, in the second clause of Richard H. Heath’s will, confer a vested or a contingent interest or estate? It is contended by the counsel for the appellants, that the bequest is contingent, that the profits must remain in the hands of the executor, accumulating until the event shall happen, to wit: the arrival at age of either of the children of B. B. Heath, which is to determine the contingency and vest the estate in the first takers, or the death of all of them before that age, which will determine it in favor of the children of Billy Raney and ^Barbara Bee; that the principal and the interest, or the corpus and accumulated profits of the estate, without abatement or diminution, must share the same fate, and all go to the one or the other class of children at the precise period of time, and not before, when the estate shall vest in one or the other, to wit: when either or any one of the first class shall attain twenty-one, or they shall all die before attaining that age. For the appellees it is insisted, that it is a vested interest; that the intent to make it so is fairly to be gathered from the will, without the aid of any technical rule of construction, but if this were otherwise, it is made so by the limitation over in a certain contingency, but subject to be divested by condition subsequent, that is to say, the death of all the first takers before the age of twenty-one.
That the terms of the bequest to 'the children of B. B. Heath, standing alone and unaccompanied with the limitation over, would have imported a contingent legacy as to the personalty, and a contingent devise as to the realty, is a proposition about which there is no room for doubt or difference of opinion. And it is equally clear and well settled upon -authority, that the limitation over made it, as to the land, a vested devise: the limitation over in the event of the death of all under age, being considered explanatory of the sense in which the testator intended the devisee’s interest in the property to depend on his attaining the specified age, namely, that at the specified age it should become absolute and indefeasible. The effect of the construction is to convert the first words, which seem to import'a condition precedent and thereby to render the devise contingent, into a condition subsequent, whereby the vested estate of the devisee would be divested or defeated upon failure to attain the age prescribed. This rule of construction as to devises is novr settled and established beyond the reach of cavil, by an unbroken series of concurrent decisions, beginning with Edwards v. Hammond, 3 Levinz, 132, followed by Bromfield v. Crowder, *1 N. R. 313, 4 Bos. & Puller; Doe, dem of Hunt v. Moore, 14 East, 601, and numerous other adjudications the same way of an early date, and sustained by the latest English adjudications on the subject. See the case of Phipp v. Ackers, in 9th Clarke & Fonnelly’s Reports of the decisions of the House of Lords, p. 583, and Bolton v. Beard, (in 1854,) 27 Eng. L. & Eq. Rep. 421. The appellants’ counsel, both in the petition of appeal and his argument, concedes this to be the settled law as to devises, but insists that in a bequest of personalty, a limitation over is subject to no such construction, and has no such effect; and that, upon the authority of the cases cited by him, this bequest was contingent as to the personalty; (Butler v. Freeman, 3 Atk. 58; Haughton v. Harrison, Ib. 329; Turner v. Atkinson, 2 Ib. 41; Glanville v. Glanville, 2 Meriv. 38; Genery v. Fitzgerald, 4 C. E. Ch. Rep. 218; Trevanion v. Vivian, 2 Vesey, sen. 430;) and that being blended in the same bequest with realty, which constituted a comparatively inconsiderable proportion of the whole bequest, one of two consequences ought to follow — ■ either that the rule as to personalty should be applied to the whole bequest, or that as to the personalty it should be held contingent, and as to the land vested. If the rule as to legacies, for which he contends, were as well settled as that applicable to devises, and if any reason could be perceived why the rule in devises was not in principle equally applicable to legacies, it would seem to be a very rational conclusion that we should embrace one or the other of his alternatives.
But neither of these hypotheses is true. On the contrary, whilst it must be admitted that the preponderance of authority is in favor of the rule for which he contends in reference to legacies or personal bequests, it is very manifest, from the review of all the decisions, late and early, including those cited by the counsel, to be found in the treatises of Jarman and Roper, that the authorities are conflicting and the doctrine left unsettled and in doubt; all agree *726 there is no reason for a ’''different rule between legacies and devises, and none whatever why that adopted and settled as to devises should not be held equally applicable to legacies. It has sometimes been said, that the rule in devises is arbitrary and rests upon no rational foundation. I entertain a different opinion. To say nothing of its consonance with the policy of the common law, which favors the vesting of estates, and which is the foundation of the general rule that interests shall be construed to be vested rather than contingent, if posssible, consistently with other rules of law and without defeating the intention of the instrument or the testator, the rule seems to me better calculated to effectuate the intention of testators, in most ii not all cases, than the one insisted on as applicable to bequests of personals, which was borrowed from the civil law. Nor is the rule any more arbitrary or groundless than the rule of the common law, according to which a limitation over, sometimes by implication, enlarges an express or implied life-estate into a fee or fee tail, and sometimes reduces a fee to a fee tail. There is certainly some, if not a very close, analogy between the rules. In most of the cases to which the rule is held applicable, they are in fact substantially nothing but executory devises or executory bequests, or limitations created in the form of a legacy to a person in a certain contingent event, such as arriving at a certain age, and the like, and if he die before the time specified, or before the time without leaving issue, over. The analogy between the present case and the ordinary executory bequest appears to me to be very striking, and certainly commends the rule, when applied to it, as imposing a construction upon the will best calculated to effectuate the intention of the testator. Strip this bequest of the proviso which immediately follows the gift, “providing either of them shall live to the age of twenty-one,” and read it as if it were a simple unqualified gift, followed by' the limitation, “if neither of them live to be twenty-one, it is my desire that my sister Lilhp Raney and sister Barbara Lee’s children *to have it between them equally,” and it would have been a technical executory devise or limitation— and as such, would have conferred a vested limited fee, subject to be divested or defeated by condition subsequent; and can there be a doubt, treating it as a question of intention to be gathered from the will, but that the testator meant by the’ proviso which followed the first gift, and the condition upon which it was limited over, to convey one and the same idea and to accomplish one and the same object; that is, first to give the estate to the first takers, but if all died before the age of twenty-one, to limit it over to the second class of children. If by the condition of the limitation over he intended to give it over if neither lived until, or all died before twenty-one, which is the same thing, he but expresses or affirms the e converso, or opposite reciprocal, proposition, in the proviso that it was not to go over if either lived to the age of twenty-one. It is, in truth, nothing more than a pleonasm, or mere tautology, never intended as a condition precedent to make the gift contingent and prevent it from vesting until some one of the first class should attain the age of twenty-one. If meaning it had, I think the most plausible and probable suggestion of the purpose and design of the proviso is that made by the opening counsel of the appellees, i. e. that it was intended to indicate the period of division, and not that of the vesting of the estate or interest. In aid of the construction in favor of a vested rather than a contingent interest, must be taken into consideration the two characteristics of this bequest, that it is residuary and to a class, both of which have alwaj^s been held to be circumstances favorable to that conclusion. In this case it requires the death of the whole class of first takers before twenty-one to make the limitation over take effect, whilst the arrival at age of any one of them vests the estate absolutely and indefeasibly in all. Suppose, then, that all but the youngest die ^before twenty-one leaving children, and he attains that age, the limitation over is -wholly and forever frustrated, *the whole estate remains subject to the provisions only of the first bequest, and the question would arise, must the sole survivor take the whole by survivorship, or only his equal aliquot share, in common with the children or representatives of the deceased members of the class? There is no intent deducible from the will to give it to the survivor, and under our law the survivor could not take the whole by survivorship, but only his share. Nor could the children or representatives of the decedents take their shares, if this were held to be a contingent interest, because they could only claim by succession to the rights of their ancestors, and if their ancestors were never entitled, which they could onlj' be by holding the interest to be vested, they could transmit no right. By holding this to be a vested' legacy we avoid intestacy, which in legal contemplation the testator is held not to have intended in any and every contin-genc3T, and we avoid the absurd consequences that would result from holding this legacy to be contingent, namel3T, that of hoarding up and accumulating the profits until a distant day, whilst those for whom, both principal and interest were intended are starving; and, moreover, in a certain contingency — that of some of the first takers dying before either attained the age of twenty-one, but leaving children — we avoid the necessity of cutting off these children and of declaring that the share of their deceased ancestor must go as in case of intestacy.
Upon the rule, then, which obtains in devises, and which I think ought to prevail in a case like this, in which both land and personalty are blended, because the rule is not only clearly settled and undisputed, but *727 is in itself reasonable and ought to be held equally applicable to personalty as to land, I am of opinion that the bequest tinder consideration was vested and not contingent, and that there is no error in the decree of the court below in so declaring.
3. Upon the third point, I am of opinion there was no error in the decree because of its ordering the ^delivery of the slaves of the guardian of the infant legatees before the settlement of the account of his administration in the court rendering the interlocutory decree, for very obvious reasons. By the admissions of the answer there was no necessity for retaining them for the payment of debts, and consequently none for retaining them to abide the event or result of a settlement. It appears, from the record, that the account of B. B. Heath, executor, the first representative that qualified, had been settled, and his estate found indebted to the estate of Richard H. Heath $820 62, after the paj'ment of all the debts that had appeared; and it would seem, from the concluding paragraph of Raney’s answer, that he had settled his before the county court, and did not desire an account, unless the court should deem it a duty incumbent on it to direct one. He says: “’This respondent will render all the accounts which may be required by your honor, if, in addition to those rendered in the county court in which he qualified, under the requirements of the law, others seem fit, and will in all respects submit himself to the decrees and orders of this court. This respondent, in his own right, feels no interest in the questions discussed in the bill, and having answéred, prays, &c. &c.” After thus admitting the payment of the debts — the settlement of the account of his predecessor, shewing a large balance in favor of the estate of his testator — the settlement of his own accounts before the county court, and after not only omitting to ask an account, but rather manifesting a desire to decline a reference to a commissioner for settlement in the superior court, I do not see what more he could ask or desire than the protection the decree of the court gave him by the refunding bond required of the guardian.
4. It is very manifest that the mistake (doubtless the result of mere inadvertence) complained of in the fourth error exists, which consists in making the bond required of Collier payable to and conditioned for the delivery of the slaves to persons as devisees or legatees *not answering to the description contained in the will. But inasmuch as the court ought not to have subjected Collier to the condition of giving any bond and security, and in doing so committed an error prejudicial to the appellees only, it is a mistake or error of which the appellants cannot be heard to complain. That a legatee for life of specific chattels, not perishable nor consumable in the use, and which it is not necessary to convert into money by sale for division or other purposes, which are decreed to him in specie, and which he had the right to have so decreed him, ought not to be required to give security, unless there is danger that the article may be wasted or otherwise lost to the remainderman, is settled by the authorities cited in 1 Roper, 864, and the 71st vol. Law Hibrary, White & Tudor’s Leading Cases in Equity, 426-7. And, a fortiori must that rule of law obtain where, instead of a life estate only, it is a vested legacy in fee, subject to be divested by a limitation over upon a subsequent contingency or condition subsequent. Such a legatee is under no obligation to give security to have the legacy forthcoming in case the event shall happen; for, as the testator has entrusted him with the legacy without security, no person has authority to require it, unless' a proper case is made for the interposition of equity in the nature of a proceeding quia timet.
The other judges concurred.
Decree affirmed.