# Wheeling.

## TOOTHMAN *et al.* *v.* BARRETT *et al.*

### Decided November 30, 1878.

S. B. died in 1858 and by his will provided: 1st. He gave to his daughter E. an equitable estate in all his lands, 2d. He gave to his son J. after the decease of his daughter E., all his lands to him *or* his heirs subject to the payment of $461.00 of legacies, within five years after her decease; and then adds also, in case that J. shall decease previous to the death of E.; *or* fail to discharge the before recited payments due or may become due on account of inability on the part of J., in either case the land to be sold by my executor, and the proceeds to be equally divided between W., C., H. & S., (who were the legatees to the amount of $400.00) and the child or children of J., when they may become to twenty-one years of age; and 3d. He gave $11.00 of additional legacies "to be paid by J., or in either case of his death or inability as before recited, by my executor;" and he appoints an executor. J. died in 1855 and E. in 1874. Before J's death he deeded his interest in the estate to C., who it is claimed purchased the interest of the legatees, W., H. and S., paying to them the full amount of their legacies. HELD:

By the first part of the third clause of this will J. took a contingent remainder in fee in the lands of the testator after the death of the life-tenant E., which by the last part of this third clause was liable to be divested by his failure to discharge, when due, the $461.00 of legacies; that the word "or" used in the first part of the third clause of this will, and the same word used in the latter part of the same clause, cannot either of them be construed to mean "and"; and that in the events which occurred, the children of J. are entitled to one-fifth of the proceeds of the land after the payment of the legacies, other than the $400.00 left to W., C., H. and S.

1878
Special Term.

14  801
f54  687

Appeal from and *supersedeas* to a decree of the circuit court of Wood county, rendered on the 13th day of October, 1877, in a cause in said court then pending, wherein Thornton F. Toothman and others were plaintiffs, and Samuel Barrett and others were defendants, granted on the petition of Thornton F. Toothman, Sallie Toothman, Benjamin Walker Jr. and Matilda Walker.

Hon. James Monroe Jackson, judge of the fifth judicial circuit, rendered the decree appealed from.

GREEN, PRESIDENT, furnishes the following statement of the case.

Samuel Barrett died in 1838 leaving a will, of which the following is a copy :

"I, Samuel Barrett, of Wood county, Virginia, do hereby make my last will and testament in manner and form following—that is to say :

"1st. I desire after my decease my funeral expenses to be paid out of money that I may leave at my decease, or so much of my perishable property as may satisfy the same.

"2d. After the payment of my debts and funeral expenses, I give to my friend, Thomas Tavenner, in trust for my beloved daughter, Elizabeth Barrett, the proceeds of all my real estate, to be delivered at the house where the said Barrett now resides, which house and privilege she is to have during her life ; also one yoke of oxen, two cows and one calf, five hogs, eight sheep together with all my household and kitchen furniture, all of which said property, or so much thereof as may remain in the hands of the said Thomas Tavenner, to be given to any person or persons whomsoever she, the said Elizabeth, may direct, at or after her decease.

"3d. I give to my beloved son, Jefferson Barrett, after the decease of my daughter, Elizabeth, all my land to him or his heirs, by him, the said Jefferson, paying $461.00 in form and manner following, to-wit :    To pay

my son, William Barrett, $100.00 in one year after the death of Elizabeth; also to pay unto my son, Caleb Barrett, one other $100.00 in one year after the payment due to William; also to pay to Henry Lower $100.00 in one year after the payment due to Caleb; also to pay to Samuel Barrett one other $100.00 in one year after the payment due to Lower; also $50.00 to my granddaughter, Ann Vaughan, in one year after the payment due to Samuel; and also, in case that Jefferson Barrett should decease previous to the death of Elizabeth, or fail to discharge the before recited payments due, or may become due, on account of inability on the part of Jefferson, in either case, the land to be sold by my executor I shall hereinafter name, and the proceeds to be equally divided between William Barrett, Caleb Barrett, Henry Lower, Samuel Barrett, and to the child or children of Jefferson Barrett, when they may become to twenty-one years of age.

"4th. I also give and bequeath to each of the children of my son, John Barrett, deceased, $1.00 each; and also to the children of Patrick Caldwell $1,00 each; also to the children of my daughter, Anna Vaughan, deceased, each $1.00, to be paid unto each and all at or before the payment of the $50.00 to Ann Vaughan, to be paid by Jefferson Barrett, or, in either case of his death or inability, as before recited, by my executor; and lastly, I do constitute and appoint my friend, Isaac McPherson, executor of this, my last will and testament, hereby revoking all other or former wills or testaments by me heretofore made.

"In witness whereof, I have hereunto set my hand and affixed my seal, this 11th day of April, in the year of our Lord 1838.

"SAMUEL BARRETT. [Seal.]"

On October 6, 1841, Jefferson Barrett, named in this will, sold to his brother Caleb Barrett, "all his right, title, interest, claim and demand, that he had or might have, to the estate of Samuel Barrett, deceased, by his

last will, thereby investing him Caleb Barrett with the whole estate in the real estate devised to him, Jefferson Barrett, subject to same conditions, on which he held or might hold, and not otherwise, thereby ratifying and confirming this real estate under the conditions and limitations named in said will to him Caleb Barrett his heirs and assigns forever.

In 1842 and 1846 Caleb Barrett also purchased from William Barrett and Samuel Barrett their interest in said estate for $100.00, and paid the same; and it is alleged in the answer of the children of Caleb Barrett, deceased, that he likewise bought in like manner the interest of Henry Lower for $100.00, and paid the same, but though the deed therefor is said to be filed with this answer, it is not found among the papers of this cause.

Elizabeth Barrett died in 1874, Jefferson Barrett died in 1855 or 1856, leaving two daughters, Sallie, who married Thorton F. Toothman, and Matilda, who married Benjamin Walker, Jr.; and they having attained the age of twenty-one with their husbands in 1875 instituted a suit in chancery in the circuit court of Wood county, against William Barrett, Samuel Barrett, Mary Lower, widow of Henry Lower, and his unknown heirs, the children of Caleb Barrett, deceased, and numerous other parties interested in the estate of Samuel Barrett under said will.

The bill and amended bill set out the facts above stated except the purchases made by Caleb Barrett of William Barrett, Samuel Barrett and Henry Lower, which are stated in the answer of the children of Caleb Barrett, who filed with their answer the evidence of the purchase, and payment therefor, of the interest of William and Samuel Barrett, but not that of Henry Lower.

The bills claim, that under the will of Samuel Barrett, as Jefferson Barrett died before Elizabeth Barrett, the real estate, devised to her for life by Samuel Barrett's will by the third clause thereof, was to be divided into five equal

parts, one part going to the assignors or heirs of William Barrett, of Caleb Barrett, of Henry Lower and of Samuel Barrett, Jr., and the remaining fifth to the plaintiffs, as children of Jefferson Barrett.

The answer of the children of Caleb Barrett claims, that on the death of Elizabeth Barrett they became entitled to all the real estate left to her for life by reason of the purchase of Caleb Barrett, their father, of Jefferson Barrett and the payment by Caleb Barrett of the $100.00 to William Barrett, Henry Lower and Samuel Barrett respectively before the death of Elizabeth Barrett, these being the sums provided to be paid them by the third clause of this will. They admit, that the sums due Ann Vaughan and the various parties named in the fourth clause of the will have not been paid, the same not being yet due.

The bills were demurred to by some of the parties defendant ; and they were regularly taken for confessed as to all the other defendants. And on October 13, 1877, the court rendered the following decree :

"And now at this day, to-wit: At a circuit court continued and held for Wood county, on the 13th day of October, 1877, the process in this cause having been duly served upon John Barrett, John A. Saunders and Lucy E. Drake, and the bill taken for confessed, and cause set for hearing as to them, they still failing to appear, answer and plead, and the order of publication being duly published and posted as required by law as to the absent defendants and the unknown parties, children, grandchildren and devisees of Samuel Barrett the elder, deceased. This cause came on this day to be heard upon the bill and the amended bill and exhibits filed therewith, taken as for confessed as to the above named home defendants ; on the order of publication as to the absent defendants, duly published as aforesaid; upon the answers of Arthur Barrett and Sophronia K. Barrett to said bill and amended bill, and general replication thereto; upon the joint and several demurrer and joint and several an-

swer of the defendants, Turner Chapman and Mary Chapman, his wife, Thomas Barrett, Caleb Barrett, James Gaston and Samuel Mathers and Sallie Mathers, his wife, to said bill and amended bill, with general replication thereto; on the exhibits filed with said last mentioned joint and several answer; and was argued by counsel. Upon consideration whereof the court is of opinion, that the demurrer is not well taken, and the same is therefore overruled. And the court is further of opinion, that the complainants are not entitled to the relief prayed for. It is therefore adjudged, ordered and decreed, that the bill and amended bill of complainants be and the same are hereby dismissed, and that the defendants recover of the plaintiffs their costs by them about their defense here expended ; and leave is granted them to sue out execution therefor; but the operation of this decree is suspended for sixty days to enable the complainants to apply for an appeal from the same, but said suspension not to take effect unless the complainants file before the clerk of this court bond, with approved security, in the penalty of $200.00, conditioned according to law."

There is an apparent clerical error in overruling the demurrer of the bill, as it appears by the balance of the decree dismissing the bill, the purpose of the court was to sustain this demurrer.

From this decree an appeal and *supersedeas* have been been allowed the plaintiffs on their petition.

*Van Winkle & Ambler,* for appellants, cited the following authorities:

2 Min. Inst. 351 ; 1 Tuck. 2 B. 134, 138 ; 6 Coke 17 ; 1 H. & M. 290, 296 ; 19 Gratt. 130; 2 Min. Inst. 341 *et seq.*; 1 Tuck. 2 B. 148, 150; 2 Min. Inst. 374 ; 6 Wall. 474, 475 ; 1 R. C. ch. 99, §§18, 28; Code W. Va. ch. 71 §§12, 13 ; 8 and 9 Vic. ch. 106, §2; 1 R. C. ch. 99, §20 ; Code ch. 71, §7 ; 6 Pet. 68 ; 2 Min. Inst. 948; *Id.* 967 ; Code ch. 77, §10; Redf. on Wills 475, 491 ; 1 Jarm. Wills 277, 278 ; *Id.* 466, 467 ; *Id.* 744, 753 ; 2 Jarm. Wills 740,

1878
Special Term.

Toothman *et al.*
v.
Barrett *et al.*

745 ; 4 Rand. 213 ; 14 Pick. 108 ; 21 Pick. 311 ; 6 T. R. 512 ; 5 W. Va. 356 ; 6 Munf. 174 ; 2 Min. Inst. 337 ; 1 Tuck. 2 B. 131, 132, 133 ; 2 Black Com. 169 ; Fearne Rem. 116, 117 ; 6 Wall. 474, 476 ; 2 Min. Inst. 338, 339 ; 3 Coke 20 (*a*) ; 13 Gratt. 152 ; 2 Min. Inst. 224, 231 ; 2 Bl. Com.; 2 Gratt. 507 ; 1 Tuck. 2 B. 153 ; 1 Jarm. Wills 443, 445 ; 3 Lom. Dig. 284, 313 ; 2 Ves. 243 ; 12 East 288 ; 1 Call 212 ; 3 Munf. 510 ; 1 Jarm. 447 ; Redf. Wills 434, §18 ; 14 Pick. 449 ; 13 Gratt. 294, 295 ; 6 Wall. 478; 14 Mass. 496 ; 3 Wash. 388 ; 2 Min. Inst. 79 ; 1 Lom. Dig. 26 ; 2 Bl. Com. 112 ; 2 Min. Inst. 86, 87 ; 1 Lom. Dig. 20, 30.

*John A. Hutchinson,* for appellees, cited the following authorities:

12 Pick. 63 ; 4 Johns. 61 ; Redf. Wills Pt. 2 p. 643 ; 6 Wall. 474, 476 ; 19 Wall. 175, 167 ; 3 Report 21 ; 4 Kent Com. 202, 203 ; 6 Wall. 68 ; 1 Allen 223 ; 15 Gratt. 557 ; 11 Gratt. 67 ; 25 Wend. 218 ; 4 Kent Com. 203, 204 ; 2 Sandf. Ch. 533 ; 6 Wall. 476 ; 2 Patt. & H. 206 ; 4 Pet. 1 ; 5 Pick. 528 ; 25 Me. 525 ; 28 Gratt. 200, 203 ; 9 Paige 534 ; 1 Vern. 79 ; 3 Meriv. 108 ; 4 Kent Com. 125 ; 1 Lom. Dig. (ed. 1839) 262 ; 4 Kent Com. 205 ; Code W. Va., ch. 71, §5 ; 5 Bos. & Pul. 37, 56 and n. ; 9 East 366 ; 2 Dow 87 ; 3 D. & E. 70 ; 6 Ves. 341 ; 1 Call 212 ; 2 Lom. Ex'rs 9 ; 5 Sim. 435 ; 8 Sim. 330 ; 9 Sim. 591 ; 1 Lom. Dig. 410 ; 1 Jarm. Wills 742 ; 1 Ves. Sen. 142 ; 1 P. Wms. 505 ; 2 Jarm. Wills 745, 24th rule ; 15 East 309 ; 2 Jarm. Wills 744, 19th rule ; 2 Paige 122 ; 3 Lom. Dig. (ed. 1838) 127 ; 22 Gratt. 224 ; 2 How. (U. S.) 43 ; 14 Mass. 496 ; 2 Ves. Sen. 243 ; 12 East 288 ; 21 Pick. 311 ; 4 Pet. 1.

GREEN, PRESIDENT, delivered the opinion of the Court:

The only question of controversy in this case is the true construction of the will of Samuel Barrett. The appellants contended, that by the second clause of this will a life estate is given to the testator's daughter,

Elizabeth Barrett, and by the third clause of this will a contingent remainder was given to the testator's son, Jefferson Barrett, in fee charged with the payment of certain legacies, provided he survived the life-tenant, Elizabeth Barrett, and provided he was of ability to pay these legacies after her death as directed by the will; but if he died before the life-tenant, Elizabeth, or had not this ability to pay these legacies, then the remainder in fee of this land was to go to the testator's executor, to be sold and the proceeds equally divided between William Barrett, Caleb Barrett, Henry Lower, Samuel Barrett and the children of Jefferson Barrett the appellants. And this construction, they contended, is strengthened by the fourth clause of the will.

The children of Caleb Barrrett, appellees, admit, that by the second clause of the will the testator's daughter Elizabeth had a life-estate, but they contend by the third clause of this will Jefferson Barrett had a vested estate in fee-simple in these lands after the death of the life-tenant, Elizabeth, charged with the payment of certain legacies payable either before her death or in the periods of time specified after her death ; that this vested remainder in fee was by this third clause of the will subjected to be divested by Jefferson Barrett dying before the life-tenant, Elizabeth, without having paid the legacies named in the third clause of the will ; and in that event, and only in that event, were these lands to be sold by the testator's executor, and the proceeds divided equally among William Barrett, Caleb Barrett, Henry Lower, Samuel Barrett and the children of Jefferson Barrett, the plaintiffs ; and that Jefferson Barrett having through Caleb Barrett paid all these legacies, due when the suit was brought, before the death of the life-tenant, Elizabeth, the contingency, on which the vested estate in fee-simple of Jefferson Barrett was to be divested, has not occurred, and the lands therefore belong in fee-simple to the assignee of Jefferson Barrett subject to the charge of the legacies named in the will not yet due and payable.

1878
Special Term.

Toothman *et al.*
v.
Barrett *et al.*

The words in the fourth clause that certain legacies are to be paid by Jefferson Barrett "or in either case of his death or inability as before recited by my executor "are construed to mean: "If Jefferson Barrett should die before or after the death of Elizabeth, having failed to discharge these legacies, in either case they are to be paid by my executor."

The court below adopted the appellee's views and dismissed the bill, holding that the plaintiffs had no interest in the lands under the will, as Jefferson Barrett had not died having failed to discharge the legacies which were due.

Was this the true construction of this will? There is no doubt, that the second clause of the will gives to the testator's daughter, Elizabeth, an equitable life-estate in all the testator's real estate. If the first part of the second clause of this will had read: "I give to my beloved son Jefferson Barrett, after the decease of my daughter Elizabeth, all my land to him *and* his heirs by him the said Jefferson paying $461.00 in form and manner following," &c., there can be no question, that the words by themselves, if uncontrolled by the subsequent words in this clause would have given Jefferson Barrett a vested remainder in fee. The addition of the words "the said Jefferson paying $461.00 in form and manner following" would not have made such vested remainder in the case we have supposed contingent; for a devise to a person after the payment of debts is not contingent until the debts are paid, such words only creating a charge. See *Carter* v. *Barnadiston*, 1 P. Wms. 505.

But the words of the will are essentially different from this supposed case. By the will the testator does not give after the death of Elizabeth to "Jefferson and his heirs" but to "Jefferson *or* his heirs." If the words of the will are to be taken according to their grammatical signification, they would give to Jefferson a contingent remainder; for by these words it is uncertain whether the lands are to go to him or to his heirs. If he should die before

the life-tenant, by the grammatical meaning of the words used the lands would go to his heirs; and if he should survive the life-tenant, they would go to him. His remainder therefore by the terms of the will, when construed according to their usual meaning, is a contingent remainder depending on his surviving the life-tenant.

But to prevent an unreasonable or absurd result, or to prevent the defeating of the apparent intent of the testator, the word "or" has frequently been construed, as though the word "and" had been used by the testator in its stead. As a general rule, words unambiguous in themselves ought not to be changed on account of the unreasonable disposition of the property, which would result from the plain meaning of the words. If the courts took such liberties with unambiguous language used by the testator, they would in effect be making a will for the testator, because the will made by him was unreasonable. But the disjunctive "or" and the copulative "and," are often used in conversation without due regard to their respective meanings; and sometimes they are thus loosely used by respectable authors. The courts have therefore taken the liberty frequently of correcting this blunder, when it has occurred in wills; and this to an extent they would not think of doing in the correction of any other supposed blunder, where the words of the testator, in their ordinary and grammatical sense were unambiguous. · If this liberty of changing the words of the testator, when in themselves they are unambiguous, is confined to a few definite words, which like the disjunctive "or" and the copulative "and," are often used improperly, and we can define with tolerable accuracy the cases, in which the court will take such liberty, no great danger will result. But if, on the other hand, there be no fixed and established rules defining, in what case the court will take such liberty, it is obvious, that great uncertainty must result and great mischief be done.

The decided cases have settled with tolerable accuracy

1878
Special Term.

Toothman *et al.*
v.
Barrett *et al.*

the cases, in which the court will take the liberty of changing the disjunctive "or," and reading the will as if the testator had used the copulative "and." Where there is nothing else in the will to control the construction a devise to A and his heirs, and if he die under twenty-one, or without issue, or if he die under twenty-one or unmarried, then to B, the word "or" should be construed "and." Therefore in such case B will take no estate unless A dies leaving no issue *and* under twenty-one, or in the other case unless A die unmarried and under twenty-one. See *Soulle* v. *Gerrard*, Cro. Eliz. 525 ; *Mytton* v. *Boodle*, 6 Sim. 457 ; *Framlingham* v. *Brand*, 3 Atk. 390 ; *Weddell* v. *Mundy*, 6 Ves. 341 ; *Denndem. Wilkins* v. *Kenneys et al.*, 9 East. 366 ; *Myles* v. *Dyer*, 5 Sim. 435 ; *Brewer* v. *Opie*, 1 Call 212.

In such cases the grounds, on which the courts have taken the liberty of changing the expressions used by the testator, are that it is from such a will apparent, that the testator had in his view the benefit of the issue of A ; or, in the second supposed case, the benefit of the husband or wife of A. For though these parties get nothing directly under such a will, yet they are the parties, who would derive a benefit through the parent, husband or wife, as the case might be. The very terms of the contingency, on which the remainder over to B is to take effect, appear in such cases to have been made with reference to the preservation of this indirect interest, which the issue or husband or wife would through the first holder indirectly have. But if the word "or" used by the testator was to receive its ordinary and proper grammatical signification, this apparently leading object of the testator, to protect the indirect interest of the issue, husband or wife, as the case might be, would be disregarded and defeated ; for if we were to give the ordinary meaning to the word "or," if A died under twenty-one, though he left children in the one case, or a husband or wife in the other, yet the estate would go over to B ; and thus the children, husband or wife, as the

1878
Special Term.

Toothman *et al.*
v.
Barrett *et al.*

case might be, would be deprived of the indirect benefit to them, which it was the apparent object of the testator to preserve. It is not believed in such case possible, that the testator intended this indirect benefit to these children, husband or wife, as the case may be, should depend on the contingency of the devisee attaining the age of twenty-one, before he died. And to avoid this consequence, supposed to be in violation of the testator's will in all probability, the courts have in such cases taken the liberty of reading the word "or" as if the testator had used the word "and." Whatever we may think of the reasoning, on which these decisions are based, they cannot at this day be questioned, being firmly established by many precedents. And whenever a case comes fairly within the reason of these decisions the word "or," when used by a testator, should be read as though it were the word "and."

These and like authorities are relied upon by the appellee's counsel in this case. But they seem to me to have no sort of application. The first part of the third clause of the will, which is the only portion of it we are now considering, gives to "Jefferson Barrett after the death of Elizabeth all my land to him or his heirs." Now under this clause, when we give to the word "or" its ordinary grammatical signification, Jefferson Barrett's children must in any event have their interest preserved. If Jefferson Barrett outlives Elizabeth, they would be benefited by the gift of these lands derivatively through their father ; and if he died before Elizabeth, they would under this provision get directly the lands. There is therefore no necessity for the court to take the liberty of changing the words of the will in this case, in order to carry out the apparent intent of the testator to benefit Jefferson Barrett's children. In fact their interest is obviously promoted by giving to the testator's will its natural and grammatical meaning. Yet in the cases before referred to the word "or" has been changed to "and" to prevent the children, or persons similarly situated, from being de-

prived of all interest, even an indirect benefit, in the testator's devise contrary to his apparent intent.

There are other cases where the word "or" has been construed "and" in a will; as where such a construction would defeat an intent of the testator clearly expressed in another part of the will. See *Grant* v. *Dyer*, 2 Dow 87.

There is also a large class of cases in which "or" has in a will been construed, as though the testator had used the word "and." I refer to those cases, where the testator devises either to one class *or* to another class, which may co-exist; it is the property alternatively. In such cases, where there is nothing else in the will to control the construction, the word "or" is construed, as though it meant "and;" for if not so construed, the only alternative would be to hold the devise void for uncertainty, as it would be impossible to say, which of the two alternative persons or classes was to take. And therefore the courts, to prevent the holding of the devise void for uncertainty, are as it were forced to construe the word "or," as though it were "and," and to hold, that both persons or classes at the same time are entitled, for a court never holds a devise void for uncertainty, if it can be avoided. See *Richardson* v. *Spraag*, 1 P. Wms. 434; *Eccard* v. *Brooke*, 2 Cox 213; *Horridge* v. *Ferguson*, Jacob 583; *Brown* v. *Higgs*, 4 Ves. 708, 5 Ves. 495, 8 Ves. 561; *Davenport* v. *Hanbury*, 3 Ves. 257; *Montagu* v. *Nucella*, 1 Russ. 165; *Jones* v. *Torin*, 6 Sim. 255.

But it is obvious, that to bring a case within the reasoning of these cases the devise must be to one class or another class of persons, both of whom may co-exist; if they could not possibly co-exist, there could be no uncertainty as to which of them should take; and the reason for construing "or" to mean "and" would not apply. Thus a devise to the children of A. or to the children of B must be interpreted to be a devise to the children of A and the children of B, otherwise the devise would be void for uncertainty. But a devise to the chil-

dren of A or to their heirs would be differently interpreted; as the heirs of a person cannot co-exist with him, *nemo est hœres viventis.* In just such a case the master of the rolls says: "the effect of the word 'or' differs wholly from that, which must have been given to the bequest, had the word 'and' been used." See *Gittings* v. *McDermott*, 2 Myl. & K. 69, (7 Cond. Eng. Ch. 265.) Some of the children of B, having died in the lifetime of the testator, it was held in that case, that the next of kin, the property being personal, took by substitution what their ancestor would have taken.

So where there is a devise to A for life, and after her death to B or his heirs, which is the case prescribed by the first part of the second clause of the will under our consideration, and B. survives the testator, but dies during the life of the tenant for life, his children or heirs will take the property, and B. would not take the property as a vested remainder absolutely. This was in substance the decision of the court in *Girdlestone* v. *Doe*, 2 Sim. 225 (2 Cond. Eng. Ch. 227.)

The exact case there was: "A bequest of £40 per annum to A. for life, and after her decease to B or his heirs;" and it was held, that "or" must be construed disjunctively. There B as in the case before us, sold his interest to a third party and then died in the life time of A, the life-tenant; and it was held, that B did not take an absolute interest, which he could dispose of, but having died in the lifetime of the life-tenant A, his assignee took no interest.

This case is substantially identical with the case under our consideration, unless the construction of the first part of the third clause of the will we are considering is controlled and altered by the subsequent portions of the will. By the first part of the second clause of this will then Jefferson Barrett took but a contingent remainder in the testator's lands, provided he out lived the life-tenant, Elizabeth; and in case he did not, the remainder in these lands went to his heirs or children then infants.

1878
Special Term.

Toothman *et al.*
v.
Barrett *et al.*

To what extent is this general purpose of the testator modified or changed by the subsequent provisions in the will? This first part of the third clause of the will gave these lands to Jefferson Barrett after the death of the life-tenant, Elizabeth, provided he survived her, otherwise to his children, infants, and all but one females. But these lands were by this first part of the third clause of this will charged with the payment of legacies to the amount of $461.00, which in the estimation of the testator was nearly their full value, as appears by the other provisions of the will; for if these legacies were not paid, the testator substitutes for them, or rather for $400.00 of them, four-fifths of the proceeds of the land when sold. The main object of the subsequent provisions of the will was to provide a simple and just mode of paying these legacies, in case they were not paid when they became due.

This mode of payment was by the sale of the lands by the executor of the testator. If the lands became the property of the heirs of Jefferson Barrett, by his death before the life-tenant, as all these heirs were females but one, and all infants, it would be evidently impossible for them to pay the legacies, with which the lands were charged; and therefore the testator wisely provided, that "in case Jefferson Barrett should decease previous to the death of Elizabeth, the lands should be sold by the executor of the testator, his friend Isaac McPherson." But as in the estimation of the testator these lands might sell but for little more or perhaps no more than the $461.00 of legacies charged on them, and thus the infant daughters of the beloved son of the testator, Jefferson, might be left unprovided for, the testator wisely provides, that the small legacies, $61.00, shall be paid out of the proceeds of the lands by his executor, but that instead of his paying the four large legacies of $100.00 each out of these proceeds, which might exhaust them, his executor should pay to each of these legatees of $100.00 one fifth of the proceeds of the lands

which remained, and that the other fifth should be paid to these infant children of his beloved son, Jefferson, when they attained the age of twenty-one : thus making a provision for them in any event without seriously injuring the other legatees.

Having thus made careful provision to meet the contingency of his son Jefferson dying before the life-tenant, Elizabeth, it remained to make suitable provision for the contingency of his son Jefferson surviving the life-tenant, Elizabeth, and becoming thus the owner of these lands. in such case it is obvious, that the testator thought it quite doubtful, whether his beloved son Jefferson would be able to make the payment of the legacies of $461.00 charged on the lands. To enable him, if possible, to do so he makes these legacies payable on long time. These payments are extended through a period of five years after Jefferson Barrett should become vested with the lands and come into the actual possession of them by the death of the life-tenant, Elizabeth. But the testator thought it possible, if not probable, that Jefferson Barrett might not be able to pay these legacies even in this long time ; and he therefore wisely provides, if he is unable to do so, his friend and executor, Isaac McPherson, should sell these lands, pay the small legacies amounting to $61.00 and instead of paying the four large legacies of $100.00 each, which might exhaust the funds, he should pay one-fifth of the surplus to each of these legatees ; and the remaining fifth, which under the previous provisions of the will would have gone to Jefferson, the testator provides shall be paid to his infant children on their attaining the age of twenty-one years.

The reason for this modification is quite apparent. If his beloved son Jefferson should be unable to pay this $461.00 in the long time of five years, it would probably be because of his insolvency. In which case if this one-fifth of the surplus of this sale was paid to him, it would be at once taken by his creditors. And it was therefore considered wise by the testator, that in case he was un-

able to pay this $461.00, it would be best to divest him of the remainder in fee in these lands, which had vested in him on the death of the life-tenant, Elizabeth, subject to this charge of $461.00, and to vest it in his infant children.

That this was the scheme of the testator, as expressed in his will, seems clear from the plain and unambiguous language used by the testator. It is admitted by the appellee's counsel, that the grammatical construction of the language used by the testator must lead to the conclusion, that this was the scheme of his will. But it is contended by them, that this scheme is so unreasonable, or absurd, as to require the court not only to change the grammatical construction of the will, but to change the words used by the testator, and substitute other words of an opposite meaning.

I can see nothing either absurd or unreasonable in the scheme of the testator's will. On the contrary it seems to me, it was wise, prudent and natural. The language of the latter part of the third clause of the will is: "And also in case that Jefferson Barrett should decease previous to the death of Elizabeth, *or* fail to discharge the before recited payments due or may become due, on account of inability on the part of Jefferson, in either case, the land to be sold by my executor I shall hereafter name; and the proceeds to be equally divided between William Barrett, Caleb Barrett, Henry Lower, Samuel Barrett, and to the child or children of Jefferson Barrett, when they may become to twenty-one years of age." And then the fourth clause of the will adds to the legacies previously recited to be paid $11.00, and says, that they are "to be paid by Jefferson Barrett, or in either case of his death or inability as before recited, by my executor.

It is not disputed, that the grammatical and natural meaning of this language is the construction I have given it above. But it is insisted, that to prevent an absurd or unreasonable result, the court ought to change this language of the testator, and construe the will as

though it read : "And also in case that Jefferson Barrett should fail to discharge the before recited payments due or may become due on account of inability on the part of Jefferson, either before or after the death of Elizabeth, *and* shall decease previous to the death of Elizabeth, then in either case the land is to be sold by my executor, &c." But why should such a transposition of the language of the testator, such addition to this language, and such a change in the words of the testator be resorted to by the court ? The scheme of the will, as expressed by the unambiguous language of the testator, is not even unreasonable, much less absurd. But even if it were unreasonable and unnatural, we would not be justified in doing such violence to his language, and in effect making a will for him, because we thought his will unnatural.

What good reason can be assigned, why in the latter part of the third clause of this will we should change the word "or" to "and," or read the will as though the testator meant by the word "or" the word "and" ? The will on its face clearly shows, that the testator used the word "or" in its true grammatical sense, as a disjunctive, and that he contemplated two contingencies, in which the land was to be sold by his executor : for he says "*in either case* the land is to be sold by my executor." And again in the fourth clause of the will he says these legacies are "to be paid by Jefferson Barrett, *or in either case of his death or inability as before recited, by my executor,*" showing clearly not only were there two contingencies, in either of which his executor was to sell this land, but also showing clearly what these two contingencies were, to-wit : the death of Jefferson before Elizabeth, and his failure to discharge when due the legacies or his inability so to do.

The appellees' counsel, to avoid the force of these words "in either case" used in the third and fourth clauses of the will, says, that its meaning should be construed to be "if Jefferson Barrett from inability shall fail to pay these

legacies before, or after, the death of the life-tenant,
Elizabeth, in either case the land is to be sold." But
this construction not only does obvious violence to the
unambiguous language of the testator in two places in his
will, but it would require us to go still further and to
transpose as well as change other language of the testator.
It requires us to construe the latter part of the third clause
of the will as though it read "and also in case Jefferson
Barrett should fail to discharge the before recited pay-
ment *and* should decease previous to the death of Eliza-
beth, the land is to be sold;" the language used by the
testator being "and also in case Jefferson Barrett should
decease previous to the death of Elizabeth *or* fail to dis-
charge the before recited payments, the land is to be
sold."

Why should the word "*or*" be thus changed into the
word "*and*"? By making such a change we would bring
this provision of the will into direct conflict with the
first part of the third clause of the will, which as we have
seen provides, that Jefferson Barrett shall have the re-
mainder in fee in these lands after the death of the life-
tenant only in case he shall survive her. The courts
have interpreted "or" to mean "and," we have seen, when
such interpretation was necessary to reconcile two con-
flicting clauses in a will. But I know no case in which
this has been done, when its effect is to make two clauses
in the will conflict, which would otherwise agree. Under
such circumstances it would be absurd to make such
change.

But even if the words of the first part of the third
clause of this will had been: "I give to my beloved son
Jefferson Barrett, after the decease of my daughter Eliza-
beth, all my lands to him *and* his heirs, by him paying
$461.00 as follows." Instead of: "I give my beloved
son Jefferson Barrett, after the decease of my daughter
Elizabeth all my lands to him *or* his heirs, by him pay-
ing $461.00 as follows:" which was the language of
the will, still we could not have changed the word "or"

in the latter part of this third clause of this will to "and" without doing obvious violence to the testator's clearly expressed intent.    If the word "such" in the first part of this clause had been "to him and his heirs," it would of course have given to Jefferson Barrett a vested remainder in fee in these lands after the death of Elizabeth. And according to the principles laid down in *Raney et al.* v. *Heath et al.*, 2 Patt. & H. (Va.) 206, the subsequent provisions contained in the latter part of this third clause of the will would not have converted this vested remainder into a contingent remainder; but it would have thereby became a vested remainder subject to be divested, if Jefferson Barrett died before the life-tenant, Elizabeth, or, if he outlived her, subject to be divested by his failure to discharge the $461.00 of legacies at the time they became respectively due.  And this reasonable and unambiguous intent of the testator ought not to be overthrown, as we have seen, by transposing the language of the testator and changing the words used by him, where it clearly appears by other parts of the will, that he used the words he did in their natural and grammatical sense.

I am therefore of opinion, that by the true construction of this will Jefferson Barrett took a remainder in fee in these lands after the death of the life-tenant, Elizabeth Barrett, contingent upon his surviving her; and if he had survived and his contingent remainder in these lands had thus vested in him at her death, it would have been liable to have been divested by his failure to pay the $461.00 of legacies at the time they respectively became due; but Jefferson Barrett having died before the life-tenant, Elizabeth, no interest in this land passed to his assignee, Caleb Barrett; and that under the provisions of this will, that in the events, which have happened this land ought to be sold, and after the payment out of the proceeds of this land of all the legacies named in this will other than the four legacies of $100.00 each to William Barrett, Caleb Barrett, Henry Lower and Samuel Barrett, that the net residue of the sale of said land

should be divided into five equal parts, one of which parts should be paid to the children of Jefferson Barrett, the plaintiffs, and Arthur and Sophronia Barrett, defendants in this cause, and the other four parts severally to the assignees, grantees or proper representatives of William Barrett, Caleb Barrett, Henry Lower and Samuel Barrett, or the proper representatives of such assignees or grantees of said parties themselves as their rights may appear.

The decree of the circuit court of Wood county of date October 13, 1877, must therefore be reversed and annulled ; and the appellants must recover of the appellees, Turner Chapman and Mary, his wife, Thomas Barrett, Caleb Barrett, James Gaston and Samuel Mathers and Sallie, his wife, who are the heirs of Caleb Barrett, deceased, their costs expended in this Court in the prosecution of this appeal ; and this cause be remanded to the circuit court of Wood county, to be further proceeded with according to the principles laid down in this opinion, and further according to the rules governing courts of equity.

THE OTHER JUDGES CONCURRED.

DECREE REVERSED, CAUSE REMANDED.