# WHEELING.

## J. L. WOODWARD *v.* W. H. & J. H. WOODWARD Ex'ORS *et al.*

Submitted June 7, 1886.—Decided July 3, 1886.

1. A testator by one clause of his will devised certain mineral lands to his executors for the term of ten years from the date thereof, and at the expiration of that term to be conveyed in fee simple to his widow and children in such shares as they would be entitled to under the law of descents of this State, the heirs-at-law of any of the children, who may have died in the mean time, taking the share of their ancestor ; providing also, that the executors may work and develop said lands in such manner and to such extent as may in their discretion seem best, and the net rents and profits during that period to be considered personal estate ; and by another clause of his will the testator provided that, notwithstanding anything contained in said former clause, his executors may, if in their discretion it seems best for the interests of his estate, at any time during said ten years convey, in fee or any less estate, said lands to a corporation formed for the purpose of developing them, taking in payment stock of said corporation or stock and money, the proceeds of such sale or the stock and money so taken to be distributed among those entitled to said lands, as if such proceeds, stock or money, were real estate. Within said ten years the executors sold and conveyed said lands to such a corporation and received in part payment therefor stock of the corporation, and one of the children sued for his portion

of said stock before the expiration of the ten years mentioned in the said first named clause of the will. HELD :

I. Even though the widow and children took a contingent or conditional estate in the lands under the said first clause of the will, the other clause being an alternative and independent substantive provision, the widow and children took under the latter clause a vested estate in the stock resulting from the sale and were entitled to have the same transferred to them at once without waiting for the expiration of the ten years mentioned in the preceding clause. (p. 207.)

II. By the sale to the corporation the lands became converted into personalty, but by the direction of the will the same should be distributed as realty, thereby giving to the widow the one third of said stock for life only instead of giving it to her absolutely. (p. 208.)

*W. P. Hubbard* for appellants.

*H. M. Russell* for appellee.

SNYDER, JUDGE :

S. H. Woodward was, on April 27, 1881, and up to the time of his death, which occurred a very few days thereafter, the owner of a large estate of real and personal property. On that day he made his last will, by which he disposed of all his property to his widow and eight children, all of whom survived him. The only provisions of the will, which have any bearing upon the controversy in this suit, are contained in the second, seventh, ninth and tenth clauses thereof and are as follows :

"2. I give and devise to my sons, William H. Woodward and Joseph H. Woodward, together one undivided half of two parcels of ore land in Alabama bought by me in 1880, one parcel being brown hematite ore land bought from Smith and the other red ore land bought from Lynn, and the undivided half of about 2,000 acres of coal land in Alabama bought in 1880, to be theirs in fee simple.

\*    \*    \*    \*    \*    \*    \*

"7. I give and devise to my executors hereinafter named all my lands situate in the State of Alabama, except the one undivided half herein devised to my sons, William and Joseph, of two parcels of said lands and of said coal lands, but including the other undivided half of said parcels and coal

lands, to be held by them for the term of ten years from the date hereof, and at the expiration of that term to be conveyed in fee simple to my wife and children in such shares and proportions as they would be entitled according to the law of descents and distribution now in force in the State of West Virginia in case of my death intestate as to said lands, the heirs-at-law of any of my children who may have died in the meantime taking the share of their parent or ancestor. During said period of ten years my said executors may work and develop said lands in such manner and to such extent as may in their discretion seem best, and the net rents and profits, if any, of said lands during that period shall be considered personal estate. At any time during said ten years, my said executors may sell and convey in fee simple my interest in any of the farming lands in Alabama which I hold together with David Spaulding of Steubenville, Ohio, should Mr. Spaulding so desire.

\*    \*    \*    \*    \*    \*    \*

"9. It is my will that my stocks and personal property be divided by my executors among those entitled at as early a time as is consistent with the interests of my estate.

"10. Notwithstanding anything contained in the seventh clause hereof, my said executors may, if in their discretion it seems best for the interests of my estate, at any time within one year after the expiration of said ten years, sell and convey in fee simple all or any of the lands in said clause mentioned, and none of the devisees herein shall be entitled to a conveyance of any of said lands, unless at the end of said one year they remain undisposed of by said executors, or my said executors in the exercise of a like discretion may at any time during the ten years or thereafter during the one year convey, in fee simple or any less estate, said lands or any of them to a corporation formed for the purpose of developing them, taking in payment stock of said corporation, or stock and money. The proceeds of any such sale, or the stocks and money taken in payment from such corporation, shall be distributed among those entitled to said lands, as if such proceeds, stock or money were real estate. No purchaser, whether such corporation or another, shall be obliged to see to the application of the purchase-money, my said ex-

ecutors being empowered to convey said lands at the times above mentioned as fully as I could do if alive."

The testator appointed his sons, William H. and Joseph H., his executors, and they on May 9, 1881, caused the will to be probated in the clerk's office of the county court of Ohio county and duly qualified as executors.

The lands of the testator in the State of Alabama, and mentioned in the seventh and tenth clauses of the will, consist of six parcels or tracts; the *first* 1,400 acres, owned by testator and David Spaulding; the *second* 1,400 acres of coal land; the *third* 900 acres of brown ore land; the *fourth* 2,200 acres of coal; the *fifth* 240 acres of brown ore; and the *sixth* about 600 acres of red ore land. The undivided half of the *fourth* and *fifth* and a part of the *sixth* of the said parcels are the lands devised to Joseph H. and William H. Woodward by the second clause of the will.

In December, 1881, a corporation was created and organized under the laws of the State of Alabama, for the purpose, among others, of developing a portion of the aforesaid lands. The said William H. and Joseph H. Woodward, in their own right, conveyed to said corporation all their interest in said lands, and as executors conveyed to it the residue of said *fourth*, *fifth* and *sixth* parcels, and about 600 acres of the aforesaid *second* tract, leaving unconveyed the residue of the last mentioned tract, and the whole of said *first* and *third* parcels. The consideration for that portion of said lands conveyed by the executors as such, was about $9,000,000.00 in money and $60,000.00 of the stock of said corporation, known as the Woodward Iron Company, which stock was received at par by said executors and is still held by them as such.

Of the eight children of the testator, four of them were daughters and four sons. The two sons named as executors had business experience and capacity, and their father had been accustomed to some extent to depend upon their aid and services in managing the various investments of his large estate. The other two sons, J. Lawrence and Solomon Woodward, were younger, had but little business experience and so far as they attempted to do business for themselves had not been successful. The testator knew that his son, J.

Lawrence, was negligent in business matters and reckless in the use and expenditure of money.

After the sale and conveyance of the lands aforesaid to the Woodward Iron Company the son, J. Lawrence Woodward, demanded from the executors his portion of the stock received and held by them as the proceeds of said sale. The executors refused to deliver or transfer to him said stock, claiming that it was their duty, and that they had the right, to retain the stock for the period of ten years mentioned in the will in the same manner as they were required by the seventh clause of the will to retain the lands if they had not been conveyed to said corporation. Thereupon in April, 1885, the said J. Lawrence Woodward exhibited his bill in the circuit court of Ohio county against said executors and the widow and other children of the testator, S. H. Woodward, deceased, to compel the executors to deliver or transfer to him his portion of said stock. Whether or not the plaintiff is under the provisions of his father's will entitled to the immediate possession and control of said stock, is the only controversy in this suit. The circuit court decided and decreed that the plaintiff was so entitled to said stock; and the executors brought the cause to this Court by appeal for the reversal of said decree.

The appellants among other matters contend, that the testator, in view of the character of his Alabama lands, the habits and experience of his children and the other surrounding facts which may be supposed to have influenced him in disposing of his large estate, by the seventh and tenth clauses of his will, manifested a controlling purpose that said Alabama lands, or the proceeds in case of sale to a corporation as permitted by the said tenth clause, should remain in the hands and under the management of his executors for the period of at least ten years from the date of the will. They insist, that it was the purpose and intention of the tesator that these mineral lands should be managed as a whole and that such management should be entrusted to some one having the testator's confidence and possessed of his views with respect to this property. In support of this position, they refer to the facts that the testator had excepted from the general disposition of these lands an undivided half

of part thereof which he devised absolutely to the two sons whom he made executors, thus giving the title of the whole lands to these two sons, a part absolutely and the residue to them as trustees or executors.

It is apparent that under the seventh clause of the will the executors had no power to dispose of the Alabama mineral lands until the expiration of ten years. During that period they were to hold the lands in trust for the widow and children, and they had the option to hold them passively or to work and develop them in such manner and to such extent as in their discretion might seem best. There is no uncertainty or ambiguity in this clause, and therefore no room for construction. By the tenth clause the period of the trust is continued one year longer at the discretion of the executors. During the last of the eleven years of this trust the executors were given the power, to be used at their discretion, to sell and convey all or any of said lands in fee, or in the exercise of a like discretion they were at any time during the ten years or one year thereafter, expressly granted the power to sell and convey in fee simple, or any less estate, the lands, or any of them, to a corporation formed for the purpose of developing them. They are thus authorized by this tenth clause to sell and convey the lands in fee to a corporation of the character described at any time after the death of the testator, and before the expiration of the eleven years. And they were to take in payment therefor stock of said corporation or stock and money. Taking this clause by itself, it is equally as plain and unambiguous as the seventh clause. If, however, we take the two clauses together and regard them as a whole, it seems to me they are entirely free from doubt or any uncertainty as to the intention of the testator. There was a large discretion vested in the executors. The only limitation upon their control, we might say their absolute control and disposition of the property, was that they should not sell and convey it for the term of ten years in any manner or to any one, except to a corporation of the kind designated. They were not required to improve or develop the property. They could do so or not, as they might, in the exercise of their judgment, elect. There is no indication that the executors were to control the policy of the cor-

poration in the event of a sale of part or all of the lands to it, or that they should retain the stock or stock and money, which they might receive for the lands. They certainly had the right to dispose of the stock or money which they might receive for the half interest they owned in their own rights in said lands and thus allow the control of the corporation to pass from them and into the hands of strangers or persons having no interest in any portion of the devised lands not embraced in the conveyance to the corporation. It therefore seems to me very plain, that the claim of the appellants that the executors were to retain the stock, in order to control the policy and management of the corporation with a view either to develop and appreciate the value of the lands conveyed to it, or such as might remain unconveyed, cannot be fairly deduced from the provisions of the will, or the facts in the knowledge of the testator at the time when he made his will. If such had been his intention the terms of his will would not be such as he has employed. It seems to me there is not even an ambiguous expression used giving the least ground for a fair inference of such a purpose.

The will appears to have been prepared with great care and precision, and all its provisions are plainly expressed. The clear and unequivocal import of it is, in regard to these lands, that they might be sold by his executors to a corporation formed for the purpose of developing them, or any part of them, at any time after the death of the testator, that they should not be sold in any other manner for ten years, and that they should not be conveyed to the widow and children until after the expiration of eleven years from the date of the will. These purposes are clearly and definitely expressed in the will, and it is, therefore, irrelevant to attempt to inquire or conjecture what motives, inducements or expectations influenced the testator to declare them in his will. The property was his absolutely and he had the undoubted legal right to dispose of it in any reasonable or unreasonable manner he might see proper, within the limits prescribed by law, especially as his competency to make a will is not questioned.

But it is contended by the appellants, that the childrens' interest in the stock derived from the lands is contingent, because the estate given to them in the lands by the seventh

clause was contingent upon their being alive at the end of ten years. To sustain this position it is claimed that the tenth clause gives the widow and children no interest in the lands as such, and that this clause is subordinate and subsidiary to the said seventh clause, that the option to convey the lands to a corporation for stock is not an alternative, distinct and independent provision, but simply the authorization of a mode of developing the lands or at most merely an exception to the seventh clause and to prevail only so far as might be plainly necessary.

It is provided in the seventh clause that the title to the lands shall remain in the executors for the period of ten years and then they are to be conveyed to the widow and children in such portions as they would be entitled to under the law of descents, the heirs-at-law of any of the children' who may have died in the meantime taking the share of his or her parent or ancestor. 1 am inclined to think the children, under this clause, took a contingent and not a vested estate in the lands during the said period of ten years. (*Toothman* v. *Barrett*, 14 W. Va. 301). Or if they took a vested estate at the death of the testator, the estate was subject to be divested as to such of the children as might die during the said period of the ten years. (*Finley* v. *Bent*, 95 N. Y. 364; Pyle's Appeal, 102 Pa. St. 317). But in my view of this cause it is unnecessary to determine what was the character of the estate, which the children would have taken in the lands under said clause of the will. I regard the provisions of the tenth clause as a substantive, independent and distinct alternative disposition of the property, complete in itself and uncontrolled by the limitations of the seventh clause. As soon as the lands were conveyed by the executors to the corporation under the provisions of this clause, and thereby converted into stock or personal property, the proceeds of the lands whether stock or money at once vested in the children then living, and if any of them had died prior to such conveyance the shares of such would vest in their heirs-at-law. (*Pyle's Appeal*, 102 Pa. St. 317.; *Tazwell* v. *Smith*. 1 Rand. 313; *Brent* v. *Washington*, 18 Gratt. 526; *Doe* v. *Considine*, 6 Wall. 458, 475; *McArthur* v. *Scott*, 113 U. S. 340).

Where a will directs land to be sold at the discretion of trustees or executors, or upon the happening of a contingency, an equitable conversion takes place at the time of the sale or the happening of the contingency. Where in such case, though the will gives the executors a discretion as to the time of selling the land and directs the money arising from the sale to be paid to particular persons, the interest of the legatee in the proceeds of the land is a vested one. The principle will be the same, whether the estate devised to be sold, be an estate in possession or only in remainder. (*Tazewell* v. *Smith*, 1 Rand. 113; *Washington* v. *Abraham*, 6 Gratt. 66; *Cochran* v. *Paris*, 11 Gratt. 348). And it seems to me, in such case, it is immaterial whether the estate in the lands was vested or contingent, if the conversion authorized by the will is actually made. In such case the estate will also be vested, unless the will shows that it was not so intended. (*Hinton* v. *Milburn*, 23 W. Va. 171; *Corbin* v. *Mills*, 19 Gratt. 438, 472).

In the case at bar the will authorized the executors to sell the lands, and they have made the sale in the manner directed by the will; the conversion therefore has taken place, and the right of the widow and children to the proceeds of the lands has become vested unless a manifest intention to the contrary appears from the will. It is insisted by the appellants that such intention does appear from the following provision in the tenth clause of the will: "The proceeds of any such sale, or the stocks and money taken in payment from such corporation, shall be distributed among those entitled to said lands, as if such proceeds, stock or money were real estate." The claim here is, that inasmuch as by the provisions of the seventh clause of the will the lands were not to be divided for ten years, this provision which directs the proceeds or stocks to be distributed "as if" they were real estate, manifests a plain intention that said stocks should not be distributed, until the lands could have been divided, if no sale had been made.

We have already arrived at the conclusion, that this tenth clause is a distinct and substantive provision entirely independent of the limitations contained in the seventh clause, and consequntly it must be construed and interpreted without reference to said clause. It is complete in itself, and there is

no necessity or propriety in introducing qualifications or restrictiions made in another and alternative provision of the will relating to a different subject or kind of property. The Court will not upon mere suspicion or conjecture enlarge the title or control of trustees. Where no intention to the contrary appears, the language used in creating the estate of trustees, will be limited and restrained to the purposes of creation. And when they are satisfied, the estate of the trustee ceases to exist and becomes extinct. (*Doe* v. *Considine,* 6 Wall. 471; Perry on Trusts, sec. 317; 2 Williams on Executors, 1260; *Newman* v. *Dobson,* 57 Tex. 117).

In the case before us, treating the tenth as an alternative clause, the purposes of the trust were fully accomplished when the lands were conveyed and the stock received by the executors. There is no intimation in the will that the executors were to exercise any control of or do anything further with the proceeds of the lands or stock than to distribute the same. On the contrary the express command of the ninth clause of the will is that the executors shall divide the stocks and personal property of the testator among those entitled thereto at as early a time as may be consistent with the interests of the estate. I do not think this provision can be confined alone to the stocks on hand at the death of the testator. But even if that be regarded as the true construction, still this clause is a clear manifestation of the intention of the testator, that he did not desire any delay in the distribution of his personal estate, or the continuation of the trusts imposed upon his executors, beyond the period fixed by the will or the necessities and interests of his estate. It plainly negatives the theory of the appellants, that it was the intention or desire of the testator that his estate should be accumulated in the hands of his executors for a fixed period in order to provide against the probable recklessness and improvidence of some of his children.

It is further claimed that, unless the distribution of the stock was intended to be delayed until the expiration of the eleven years, the direction in the tenth clause, requiring the stocks and money received from the corporation to be distributed "as if" the same were real estate, can have no effect, and the sense would be precisely the same if this di-

rection had been omitted entirely. It seems to me such is not the case. It must be remembered, that the widow as well as the children are included in this distribution, and the fund to be distributed has by operation of the sale and conversion of the lands become personal estate. Now, if this personal estate, the proceeds of the lands, were distributed as personalty, the widow would be entitled to the one-third thereof absolutely, whereas if it is distributed " as if " it were real estate she would be entitled to the one-third for life only. It is apparrent therefore that this express direction was necessary in order to prevent the widow from taking an absolute estate instead of an estate for life. This makes it obvious that this provision relates only to the shares the legatees are to take and not to the time of distribution.

Upon a full consideration of the whole cause, I find no error and therefore the decree of the circuit court is affirmed.

AFFIRMED.