# CHARLESTON.

H. C. PAGE, EX'R. v. PETER W. ROUSS, *et al.*

Submitted April 15, 1920.   Decided April 27, 1920.

1.  WILLS—*Property Relinquished by Widow is a Trust Fund to Compensate Legatees and Devisees for Loss Therefrom.*

    The property and benefits relinquished by a widow in the exercise of her legal right to renounce the provision made for her in lieu of dower, by her husband's will, constitute a trust fund for compensation of legatees and devisees, for the losses inflicted upon them by the exercise of such right. (p. 308).

2.  SAME—*Depreciation of Specific Devise Compensable From Fund Arising From Widow's Election as Against a Residuary Legatee.*

    In view of the rank and dignity of a specific devise in law and in the scheme or plan of testamentary disposition of an estate, founded upon the presumed intention of the testator, in the absence of a contrary expression of intent, a loss or depreciation thereof occasioned by the exercise of a right of election conferred by law, is fully compensable out of the trust fund resulting from the election, as against a residuary legatee, if such fund is sufficient. (p. 308).

3.  SAME—*Legacies Charged Upon Specific Devise of a Contingent Remainder in Fee Do Not Bear Interest Before Their Vesting Because of Widow's Previous Election or a Previous Acceptance by Devisee.*

    Legacies charged upon a specific devise of a contingent remainder in fee, and payable upon the death or remarriage of the testator's widow, are not accelerated by her election to take under the law and against the will, nor by an acceptance of the devise at a date earlier than that at which the will vests it; wherefore, if the remainder vests on the remarriage of the widow, making the legacies then payable, they do not bear interest from an earlier date by reason of a previous election of the widow or a previous actual or attempted acceptance by the devisee. (p. 310).

Appeal from Circuit Court, Jefferson County.

Suit by H. C. Page, executor of William W. Rouss, deceased, for instructions, against Peter W. Rouss and others. From the decree, Peter W. Rouss appeals.

*Modified and affirmed.*

*James M. Mason, Jr.,* for appellant.
*A. Moore, Jr.,* for appellee.

POFFENBARGER, JUDGE:

Peter W. Rouss to whom his uncle, William W. Rouss, devised his farm consisting of forty acres of land, on which he resided, at the time of his death, in a stately and ancestral home called Shannon Hill, complains of the decree in this suit brought by the executor of the will, for advice and instruction, on the ground of denial to him of what he deems to be the proper measure of compensation due him for depreciation or loss in the value of the property so devised, by reason of the renunciation by the widow of the testator, of the provision made for her in the will, and her claim of dower in the devised property. By the will, she was given a life estate in the farm, provided she would not remarry. Subject to this estate in her, it was devised to Peter W. Rouss, contingently. In the event of his death before the date of the remarriage or death of the widow, it was to go to another nephew, Milton O. Rouss. In the event of her remaining unmarried and surviving both Peter W. Rouss and Milton A. Rouss, it was to go successively to other nephews of the testator. But, in the hands of Peter W. Rouss, it was charged with six $2,000.00 demonstrative legacies, payable to such of the legatees as should be living at the termination of the life estate. About a year and nine months after the death of the testator, the widow married Milton O. Rouss.

In addition to the life estate in the farm she was to receive $2,000.00 in cash, an annuity of $2,000.00 and an interest the testator owned in her ancestral home, known as Mount Pleasant, which has been valued, for the purpose of this litigation, at $3,500.00. All of this, she lost by her renunciation of the provisions made for her in the will; but, by the same act, she imposed her dower right upon the farm to the prejudice of Peter W. Rouss and obtained $75,947.86 in stocks, bonds and other personal property, to the detriment of the residuary legatee. The decree ascertained that Peter W. Rouss sustained a loss of $4,327.00, in respect of his devise, and the residuary legatee a loss of $75,947.86; and that the widow relinquished, in addition to her life estate, benefits amounting to $9,423.00, made up as

follows: rent of the place, chargeable to her, $738.00; hay, corn and other supplies used and disposed of by her, $185.00; the cash legacy, $2,000.00; the annuity for a year and a half $3,-000.00; and the interest in her ancestral home $3,500.00. Out of this, the court allowed the complaining devisee only $500.00, by way of compensation, and the residue thereof, $8,923.00, the residuary legatee was permitted to retain by way of compensation for his loss. The appellant claims he should have been reimbursed out of the $9,423.00 to the extent of his entire loss, $4,327.00. He also complains of the acceleration of payment of the demonstrative legacies, charged upon the farm, so as to make two-thirds of each of them bear interest from the date of the renunciation of the will and the remaining one-third thereof bear interest from the date of the second marriage. His contention is that these legacies should bear interest only from the date of the marriage.

Under the will, the executor and trustee took the greater part of the personal estate as residuary legatee. In his hands, it was to constitute a trust fund to be named the "William Rouss Charity Fund." What was so disposed of, together with what was given to Peter W. Rouss and the widow, constituted the bulk of the entire estate. There were numerous relatively small bequests that were not affected by the renunciation. The will does not in terms give the widow a life estate in the farm but the legal effect of the language used is to vest in her such an estate. On this point, the will reads: "I hereby give my wife Bettie, also the privilege to live in the mansion Shannon Hill without cost during her widowhood, and on the forty acres therewith, and the full use of all horses, cows, vehicles of all kinds, farming implements and house furnishing found therewith. But should she marry again * * *, then at the time of her second marriage she shall give up and move away from Shannon Hill * * *. At the death of my wife, Bettie or in the event that she should marry again then I give, devise and bequeath to my nephew P. W. Rouss, said Shannon Hill, the forty acres of land belonging thereto, its entire contents and all horses, cows, vehicles of all kinds and all farming implements found thereon." The clear import of these terms is that the widow should have the possession, use and enjoyment of the farm and mansion house until her death provided she did not remarry. No right

of possession was vested in Peter W. Rouss, until her death or remarriage. As she had right to possession and full enjoyment of the property, for and during her natural life, unless she should remarry, she necessarily had a conditional or defeasible life estate, for the will made no provision for possession thereof by any other person at any time during her natural life, unless she should remarry.

As the remainder in fee in the Shannon Hill property was given to Peter W. Rouss, only in the event of his survival of the widow or her second marriage, it was a contingent remainder. Whether he would so survive was uncertain, and a remainder given to take effect upon the happening of an uncertain event is a contingent remainder. *Woodward* v. *Woodward*, 28 W. Va. 200; *Hinton* v. *Milburn's Ex'rs.*, 23 W. Va. 166; *Toothman* v. *Barrett*, 14 W. Va. 301. And, in the event of such survival, the remainder could not vest in him until the widow either died or married. The time of the vesting of the remainder, as well as of the right of possession, is fixed and determined by the explicit words of the will. The widow's election not to take under the provisions of the will and to take dower in the land and her distributive share of the personal property, under the law, did not in any manner affect the vesting of the remainder nor Peter W. Rouss' right of possession.

The marriage vested the remainder and, by the renunciation or election to take under the law and not under the will, on the part of the widow, she took out of the devise a life estate in one-third thereof, which the will did not contemplate nor intend, to the detriment of the devisee. Had she married without renouncing the will, Peter W. Rouss would have taken the farm unburdened by any life estate in any portion of it. It is clear, therefore, that he has suffered loss, in a legal sense, notwithstanding his acquisition of title earlier than he could have obtained it if the widow had remained single. If the testator's scheme of disposition had not been altered by her election, he would have taken the land unburdened by her dower, immediately upon her remarriage.

Full reimbursement or compensation for his loss, out of the amount of money relinquished, is claimed on the ground that the specific devise is superior in dignity and rank to a general gift

out of the estate, such as a residuary legacy or a residuary devise. In the argument submitted for the appellee, denial of this ground of preference is based upon the terms of the residuary clause which, it assumes, gives to the executor and trustee the residue of the personal estate only, and not the residue of the entire estate, notwithstanding the will by the eleventh clause thereof, directs the residue of the testator's estate to be converted into a perpetual trust fund. The residuary clause may dispose of personal property only. The farm was the only real estate the testator owned, and his will shows conclusively by its terms, that he desired it to remain forever, if possible, in the family name. It was given successively, in the event of deaths, to his five nephews, Peter W., Milton O., Frank, George and Alexander Rouss. The context of the terms "residue of my estate" indicate very strongly that they were used with reference to the personal estate only. After having fully expressed his will as to the real estate, the testator entered, in the seventh paragraph, upon the disposition of his personal estate, and it was in connection with such disposition, that the words "residue of my estate" were used. Possibly he did not intend to dispose of his farm in any event, by that clause. If this be true, and there had been a lapse of the devise, it likely would not have passed by the residuary clause, for a residuary legacy does not carry a lapsed devise. At common law, a void or lapsed devise, always went to the heir, unless the will disclosed a contrary intention. 13 Am. & Eng. Sncy. L. 1 Ed., p. 40. Under our statute, sec. 13, ch. 77, Code, a void or lapsed devise passes under a residuary devise, if there be one, and, if not, it goes to the heirs at law of the testator, as if he had died intestate, unless a contrary intention appears by the will. Nevertheless, the personal property disposed of by the residuary clause was, in a practical sense and according to the testator's plan of disposition, the residue of his entire estate, for he had previously given away, in express terms, all other parts of it, by specific devises, specific bequests and general pecuniary bequests, all accurately defined.

Of course, the beneficiary of the devise took it subject to all the liabilities and equities with which it was affected or burdened in the hands of the testator. He could obtain no greater right respecting it than his benefactor had. *Shobe's Ex'rs.* v.
86 W. Va.

Carr, 3 Munf. 10; 40 Cyc. 1996. But the liability of the land to the dower right of the widow inchoate while the testator lived, was provisionally removed therefrom by the will which gave the widow other property in lieu of it. Though he could not absolutely and finally discharge the land from the liability imposed upon it by law, he could conditionally and provisionally so discharge it. It was discharged actually and legally from the time the will took effect, until the widow made her election not to be bound by the will. To effect a restoration of that liability, it was necessary for her to renounce the provision made for her, and, until the date of her renunciation, the land was discharged. Code, ch. 78, sec. 11. Obviously, therefore, at the date of the creation of the contingent remainder in favor of the appellant, the dower was not a liability or charge upon the devised land nor an equity in it, within the legal meaning of the terms. This charge was subsequently imposed upon it by the widow's election.

The doctrine of compensation for losses occasioned by the exercise of the right of election is an equitable doctrine based entirely upon judicial conceptions of justice and good conscience. Under the common law, what was relinquished or lost by the exercise of such a right of election did not go to any of the devisees or legatees. As to it, the testator was deemed to have died intestate, and it went to his heirs. Courts of equity deeming it right, just and fair under the circumstances, that the property so relinquished should go to those who were injured by the exercise of the right, by way of compensation for their losses, regard and treat the person making the election and by his conduct occasioning the loss, as a trustee holding the relinquished benefits of the will in trust, for reimbursement of the devisees and legatees disappointed and injured by his act. Hence, the relinquished benefits do not go by operation of law into the residuary estate or any other part of the estate of the testator. They constitute a trust fund which the court uses for reimbursement or compensation for losses. Underhill on Wills, sec. 729; *Hattersley* v. *Bissett,* 51 N. J. Eq., 597; *Farmington Sav. Bank* v. *Curran,* 72 Conn. 342. "The doctrine of election is one resulting not in forfeitures, but in compensation, so that a party claiming under a will shall not claim against that will except

upon condition of compensation for whatever he may have claimed under the will. In other words, he is permitted, after having claimed under the will, to claim against the will, if, out of the claim against the will, he will make compensation for what he has claimed under the will." *Young* v. *Young,* 51 N. J. Eq. 491; 40 Cyc. 1994; *In re Vardon,* 31 Ch. D. 275.

Whether, in making such compensation, legacies other than residuary and specific devises take precedence over a residuary legacy or a residuary devise or both, is a question upon which our decisions and those of Virginia are silent. In *Anderson* v. *Piercy,* 20 W. Va. 282, the fund in controversy and disposed of upon the principle of compensation, had arisen out of property given to the residuary legatees. Though the widow might have taken it from them, she had not in fact done so. It was not a fund she had relinquished. In view of these facts, the court left it where the will had placed it. In *Morriss* v. *Garland,* 78 Va., 215, the special legacies were not abated nor compelled to contribute to what was taken out of the estate by the widow's election. Only the residuary legatees suffered loss. Hence, the compensation naturally went to them. In *Kinniard* v. *Williams,* 8 Leigh 400, only a single devisee suffered loss and he alone was compensated, of course. There was no renunciation. The widow merely elected to take her own property which her husband had devised to another and that did not amount to a statutory renunciation. The devisee of her land was the only person injured and the only person compensated by what the will gave her, she not being permitted to claim both under and against the will as to him. In *McReynolds* v. *Counts,* 9 Gratt, 242, the legatees were all on the same basis and compensated alike. The devisee in remainder was not hurt by the election. In *Findley* v. *Findley,* 11 Gratt. 434, no question arose between or among the legatees. The court merely held that such of them as had suffered loss should be compensated. Such also was the character of the ruling in *Mitchell* v. *Johnson,* 6 Leigh 461. The decree under review in that case, in so far as it related to compensation, was interlocutory and the court did not go beyond enunciation of the general principle of compensation, in its decision.

In other jurisdictions, the question here presented has been

determined agreeably to the appellant's contention. In Kentucky the court goes to the extent of holding in favor of a specific devisee, that he is entitled to compensation out of the residuary estate, or property as to which the testator died intestate, to the detriment or postponement of residuary legatees and distributees. *Treasy* v. *Treasy,* 36 S. W. 3; *Chamberlin* v. *Berry's Ex'r.,* 56 S. W. 659. In North Carolina, the court seems to have held that the property relinquished by the widow was deemed not to have been disposed of by the will, but compensation was allowed. *Worth* v. *McNeil,* 57 N. C. 272. This may be the basis of the Kentucky decisions. More in harmony with the theory of ours are those of New York and Pennsylvania, holding the relinquished property to be a trust fund out of which compensation is made, and the decisions in those states hold that a specific devise must be made good by compensation, before the residuary legatees and devisees are entitled to anything out of the trust fund. *Tehan* v. *Tehan,* 83 Hun. (N. Y.) 368; *Sandoe's Appeal,* 65 Pa. St. 314; *Gallager's Appeal,* 87 Pa. St. 200. In Maryland, compensation as between a residuary devisee and a specific devisee, respecting the relinquished benefits, is not allowed. *Devecmon* v. *Kuykendall,* 89 Md. 25; *Darrington* v. *Rogers,* 1 Gill. 403.

In our opinion, the New York and Pennsylvania decisions are well founded in reason, analogy and the testator's scheme or plan of disposition of his estate. Definite and specific things, acts and provisions almost universally prevail over such as are general and indefinite. When a certain and definite subject is given by a will, there can be no doubt that the testator intended the donee to have all of it. When a residue only is given, his will or intention as to the extent of the benefit bestowed is less certain. In such a gift, there is often an implied condition, and sometimes an express one. In view of this, residuary legacies always abate first, in case of necessity. 13 Am. & Eng. Ency. L. 1st. Ed. 131. Where the will creates two residues and abatement is necessary, the second abates first. *Lewin* v. *Lewin,* 2 Ves. Sr. 415; *Blower* v. *Morret,* 2 Ves. Sr. 421. Annuities prevail over legacies, in abatement. *Covre* v. *Todd,* 7 D. M. & G. 520. A general charge of legacies on the real estate or on all the real estate, does not alone charge any specific devise. 13 Am.

& Eng. Ency. L. 1st. Ed. 126. Such being the rank and dignity of a specific devise, founded upon the presumed intention of the testator in every case in which he has not expressed a different intent, it is manifest that a loss thereof occasioned by the exercise of a right of election should be fully compensated, if possible, as against a residuary legatee, out of the trust fund arising from the relinquished property.

As the election did not vest the devise and the demonstrative legacies were not payable until the remarriage of the widow, no reason for accelerating payment of any part of any of said legacies, to the date of the election, is perceived. It is argued that the execution of a deed by the devisee, granting or releasing a life estate to the widow, in the farm, amounted to an acceptance of the devise, imposing a personal obligation to pay the legacies charged on it. But it suffices to say, in reply to this contention, that the will did not make them payable until the death or remarriage of the widow. In no event do these legatees lose anything, and there is no reason why they should be paid at an earlier date than that fixed by the will. As they neither gain nor lose by the renunciation, nor, beyond the intent of the testator, by the acceptance, if there was one, there is no basis for acceleration of payment, no equitable ground on which to base it. The devisee does not get any of the rents of the farm, accrued actually or theoretically between the dates of election and remarriage. He got no vested estate in any of the land until the latter event occurred.

Upon these principles and conclusions, the decree complained of will be so modified as to allow the appellant $4,327,00 out of the trust fund of $9,423,00 and to relieve him of interest on two-thirds of the demonstrative legacies, prior to the 23rd day August, 1916, and to require him to pay interest on the whole thereof from said date, and, as so modified, it will be affirmed.

*Modified and Affirmed*