In the Matter of the Will of IRVING I. BLOOMINGDALE, Deceased.

GEANNE H. BLOOMINGDALE, Appellant and Respondent; ROSALIE B. BLOOMINGDALE et al., Respondents and Appellants; GEANNE H. BLOOMINGDALE et al., as Executors of IRVING I. BLOOMINGDALE, Deceased, Respondents.    (Appeals Nos. 1 and 2.)

Argued May 31, 1938; decided October 18, 1938.

*John J. Cuneen* for Geanne H. Bloomingdale, appellant and respondent. The widow is entitled to preference because the dominant intention of the testator is indicated by the circumstances surrounding the making of the will, the provisions penalizing the divorced wife and son in favor of the widow, the testator's expressly declared preference for his widow over his own son, a comparison of the residuary bequests, and the other provisions of the will and codicil. (*Matter of McCafferty*, 142 Misc. Rep. 371; 236 App. Div. 678; *Matter of Gabler*, 267 N. Y. 559; *Matter of Waxman*, 129 Misc. Rep. 829; *Eidt* v. *Eidt*, 203 N. Y. 325; *Matter of Miller*, 161 N. Y. 71; *Matter of White*, 125 N. Y. 544.) The Surrogate was in error as to the status of the son and the first wife of the decedent under the separation agreement and under the will and codicil. (*Matter of Benson*, 96 N. Y. 499; *Caulfield* v. *Sullivan*, 85 N. Y. 153; *Matter of Westerbeke*, 262 N. Y. 466; *Matter of Rosenthal*, 141 Misc. Rep. 404; *Lee* v. *Tower*, 124 N. Y. 370; *Helvering* v. *Butterworth*, 290 U. S. 365.) Trust C is not to be set up only out of what remains after satisfying Trusts A-1, A-2 and B. (*Matter of Gabler*, 267 N. Y. 559; *Matter of Anderson*, 143 Misc. Rep. 250; *Matter of Rowland*, 273 N. Y. 100.)

*Max D. Steuer* and *Sidney O. Friedman* for Rosalie B. Bloomingdale et al., respondents and appellants. Trusts A-1 and A-2 for the benefit of the first wife are preferred to Trust C for the benefit of the widow. (*Morris v. Sickly,* 133 N. Y. 456; *Lee v. Tower,* 124 N. Y. 370; *Matter of Russell,* 168 N. Y. 169; *Herzog v. Title Guarantee & Trust Co.,* 177 N. Y. 86; *Matter of Smallman,* 138 Misc. Rep. 889; *Wetmore v. St. Luke's Hospital,* 56 Hun, 313; *Lewin v. Lewin,* 2 Ves. Sr. 415; *Page v. Rouss,* 86 W. Va. 305; *Matter of Rounds,* 252 App. Div. 10; *Matter of Clark,* 251 N. Y. 458; *Matter of Kohler,* 231 N. Y. 353; *Matter of Title G. & T. Co.,* 195 N. Y. 339; *Buffalo Trust Co. v. Leonard,* 154 N. Y. 141; *Matter of Ridder,* 79 Fed. Rep. [2d] 524; *Cole v. Niles,* 3 Hun, 326; 62 N. Y. 636.) Trusts A-1 and A-2 should be set up with sufficient corpus to yield $66,600 per annum and $5,400 per annum respectively, plus expenses of administration and income taxes. (*Matter of Kohler,* 231 N. Y. 353; *Matter of Vanderbilt,* 134 Misc. Rep. 574; 229 App. Div. 574; *Matter of Willets,* 112 N. Y. 289; *Griffen v. Keese,* 187 N. Y. 454; *New York Life Ins. & Trust Co. v. Sands,* 24 Misc. Rep. 102; *Matter of Lichtenberg,* 171 N. Y. Supp. 570.)

*Richmond J. Reese* and *Alexander J. Lindsay* for Richmond J. Reese, as executor, respondent.

RIPPEY, J. This proceeding arose on the petition of Rosalie Banner Bloomingdale and Donald Bloomingdale for a construction of the will of Irving Bloomingdale, deceased. They claim that the will should be so construed as to accord preferment and priority to them over the widow, Geanne Hughes Bloomingdale, in the manner in which the assets of the estate should be segregated and income and, if necessary, principal distributed. In her answer, the widow asserts that she is entitled to priority and preference over the petitioners. Two decrees of the Surrogate resulted. Appeals were taken by each to the Appellate Division from so much of the decrees as were,

respectively, deemed unfavorable. The Appellate Division affirmed and the parties are here by permission of this court.

Bloomingdale died October 15, 1929, leaving a last will and testament, dated December 16, 1927, and a codicil thereto, dated May 12, 1928, and an estate worth upwards of nine million dollars, consisting almost entirely of the capital stock and bonds of Bloomingdale Bros., Inc., which operated a department store in New York city, and of a realty company which owned the property in and upon which the store was operated. His first wife, Rosalie Banner Bloomingdale, whom he married February 5, 1907, procured a decree of divorce from him in Paris, France, on December 15, 1926, and was living in Paris at the time of his death, as was Donald Bloomingdale, sole issue of that marriage, born September 12, 1913. The second wife of deceased, Geanne Hughes Bloomingdale, whom he married shortly after his first wife divorced him, was living with him at the time of his death. There was no issue of that marriage. The will and codicil were probated on January 6, 1930, and letters testamentary were issued to his widow, Geanne Hughes Bloomingdale, and to Richmond J. Reese, and subsequently the same persons were appointed trustees of the trusts which he directed to be set up. Nine years have passed since his death but the estate has not been segregated into the several trusts for which the testator made provision.

On May 26, 1926, Bloomingdale and his first wife, then being separated and living apart, entered into an agreement of separation which continued in force to the time of his death. In this instrument he agreed " to pay to Rosalie B. Bloomingdale, during the term of her natural life, the sum of Seventy-two thousand ($72,000) dollars per annum, in equal monthly installments, the first installment to be paid on and as of the first day of June, 1926." It was agreed that she should at no time

be required to receive a lesser sum or permitted to demand a greater sum regardless of any change in his financial condition. In consideration of his promise to make such payments, his wife returned to him, with power to cancel and destroy, his various promissory notes aggregating in value six hundred fifty thousand dollars which she then held, and released and discharged him from all liability thereon, transferred and set over to him absolutely certain preferred stock of Bloomingdale Bros., Inc., then owned by her, and conveyed and released to him all right of dower or other interest in his then existing or subsequently acquired estate and all interest which she had or might thereafter have in respect to any policies of insurance upon his life. Bloomingdale deposited stocks and bonds in escrow, over two million dollars in value, as security for its performance. From the time of the execution and delivery of the agreement to the time of Bloomingdale's death, his former wife had received seventy-two thousand dollars per year in equal monthly installments of six thousand dollars each, free from all taxes of any kind. He also provided that, in the event the first wife predeceased him, he would pay to her mother, Philipine Banner, $5,400 per year in equal monthly installments during her life. He also agreed that he would, upon his death, by will and other legal instrument, bequeath and give to Donald Bloomingdale, the son, either cash, stocks, bonds or securities having a minimum value of two million dollars, of which the son should receive all income for life and five hundred thousand dollars of principal at or before he should arrive at the age of thirty-five years, with the balance of principal to be disposed of as the father might subsequently provide. It was provided that, in the event of his failure to make such a provision for the benefit of his son, the latter should be " considered and deemed to be a creditor " of his estate and should " be entitled to file a claim against the estate of Irving I. Bloomingdale accordingly."

In the " First " clause of his will, the testator provided for the payment of his debts, funeral expenses and costs of administration, which latter, he directed, should include all transfer and inheritance taxes. In the " Second " clause, he bequeathed his household furniture and certain personal effects to his wife. In the " Third " clause, bequests of $5,000 were made to each of two nephews.

In the " Fourth " provision of the will, he gave, devised and bequeathed " all the rest, residue and remainder " of his estate to his executors and trustees in trust. The trusts designated in this clause which are left in the management of the executors and trustees are designated as Trusts " A," " B " and " C," each set out in a single and separate paragraph. It is manifest that the testator, in preparing his will, had first and primarily in mind the satisfaction of his obligations to his first wife and son arising out of the provisions of the separation agreement. He distinctly recognized those obligations. He knew that the son could enforce the provisions of that agreement for his benefit as a creditor if he did not expressly provide for him in his will in the terms of the antecedent agreement. He knew that his first wife was entitled to $72,000 per year out of his estate if he should not make such provisions for her in his will as she might be willing to take. He knew that both might enforce such obligations in preference to any provision he could make for his widow. He had no misapprehension or lack of knowledge as to their preferred status. Furthermore, he distinctly recognized the priority of those obligations in the wording of the will. The provisions of Trust " A," he said, " are made in compliance with and performance of the terms of the said agreement between Rosalie B. Bloomingdale and me and not in addition thereto." He provided that, should his former wife or her mother attempt to enforce the provisions of the separation agreement, to the extent either should be successful, the trust

should abate. He required her to elect to take under the will or to enforce her claims under the agreement and to release to the executors and trustees all the securities then held in escrow for the performance of the agreement if she should elect to take under the will. In the paragraph providing for Trust " B " he said, " The provisions contained in this paragraph are in performance of my obligation as to my said son as contained in a certain agreement between one Rosalie B. Bloomingdale and me, dated the 26th day of May, 1926, and in performance of all other obligations, if any, to him, and the provisions contained in this paragraph are not supplemental or in addition to the said agreement." Thereupon, he directed his executors and trustees to first " set aside in a separate trust fund, which I herein designate as Trust ' A,' securities which my trustee or trustees shall deem best suited to the purpose and which will yield a minimum of Seventy-two thousand ($72,000) dollars per annum, and to pay to my former wife Rosalie Banner Bloomingdale out of the income thereof, and out of the principal if the income in any year or years shall not be sufficient, the sum of Seventy-two thousand ($72,000) dollars per year payable in equal monthly installments in advance as long as she shall live, payments to be made at such places as said Rosalie Banner Bloomingdale may designate in writing, commencing from the date that the next payment shall have been due and unpaid pursuant to the terms of the agreement dated the 26th day of May, 1926, and made between said Rosalie B. Bloomingdale and me. Upon the death of said Rosalie Banner Bloomingdale, then my trustee or trustees are directed to pay out of the income, or principal if necessary, the sum of Fifty-four hundred ($5,400) dollars per year to Philipine Banner, the mother of said Rosalie Banner Bloomingdale, as long as she shall live, in equal monthly installments, the first installment to be paid on and as of the first day of the month following the death of said Rosalie Banner Bloom-

ingdale." And, secondly, directed them "to set aside securities having a market valuation of approximately Two Million ($2,000,000) dollars but not less than Two Million ($2,000,000) dollars, in a separate fund which I designate as Trust ' B,' and to pay over the income of the same to my son Donald Bloomingdale (or to his legal guardian while he is a minor) for his maintenance and support as long as he shall live; to pay to said Donald Bloomingdale Five Hundred Thousand ($500,000) Dollars of the principal of said trust before he shall attain the age of thirty-five years, at such times and in such amounts as to my trustee shall seem advisable. Upon the death of my said son Donald Bloomingdale, then such portion of the principal of this trust as shall not have been paid to him shall be paid to the children of my son Donald Bloomingdale, and if he shall die without children, then said principal or such portion of said principal as shall not have been paid to him, shall be put into and become a part of Trust ' C ' hereinafter described." He further provided in paragraph " A " for disposition of the income from the trust in excess of that required to be paid to his first wife and for disposal of the corpus of the trust upon the death of the first wife and her mother and, in paragraph " B " for disposition of remaining principal of the trust upon the death of Donald. Paragraph " C " of the fourth provision of the will provides for " all of the rest, residue and remainder " of the estate which the trustees of the gross residuary estate are directed " to assemble into a third trust which I designate as Trust ' C,' and to pay Six Thousand ($6,000) Dollars per month net free from all transfer and/or inheritance taxes and yearly personal federal income taxes and state income taxes in as nearly equal monthly payments as may be practicable commencing from the date of my death, to my wife Geanne Hughes Bloomingdale from the income if that be sufficient, and from the principal if the income be insufficient, as long as she shall live, to pay any and all

income in excess of Six Thousand ($6,000) Dollars per month net as aforesaid to any and all issue, posthumous or otherwise, of mine by my wife Geanne Hughes Bloomingdale, but if there be no such issue then she is to receive the entire income of this Trust ' C.' "

It will be observed that under the provisions of Trust " A," the testator intended to give to the first wife a net income for life of $72,000 under any and all contingencies as he was bound to do by the separation agreement, but he authorized an invasion of the principal in the event a deficit of income should arise. Conceivably a situation might result where the principal should be exhausted and attempted compliance with his obligation and purpose would fail. Thereupon, to avoid any possibility of the happening of such a contingency, the deceased executed the codicil to his will wherein he directed " that the securities directed to be segregated under Trust A be divided into two parts to be known as Trust A-1 and Trust A-2. Trust A-1 shall produce an income of Sixty-six Thousand and Six Hundred Dollars ($66,600) per annum, and Trust A-2 shall produce an income of Five Thousand and Four Hundred Dollars ($5,400) per annum; and in the event that at any time or times such income shall fall short of either or both of said sums, then the deficit shall be made up from the income (or from the principal if the income is not sufficient) of Trust C." The income of both trusts in the amounts as provided he directed should be paid to the first wife for life. Upon her death, the income of Trust A-1 was directed to be paid to his widow, if living, and of Trust A-2 to Philipine Banner for life. Upon the death of the last surviving life tenant of each trust, it was provided that the corpus of the trust should be turned over to Donald.

The provisions of the will and codicil thus clearly indicate that the testator intended to and did provide that the payments to be made to the first wife should ensue under any and all contingencies in preference and priority to any payments for the widow.

The first wife has elected to take under the will. Before making such election, she instituted a proceeding for construction of the will and codicil to determine whether she might receive the income of $72,000 per year net, free and clear of income and inheritance taxes. In that proceeding it was determined that, in the event that she should elect to take under the will and codicil, the executors and trustees were required to " pay to her during her lifetime, the sum of $72,000 per annum, in equal monthly installments, net and free from all income taxes, both New York State and Federal, which taxes, if any, upon said income, are to be borne and paid by the executors and trustees of the estate of Irving I. Bloomingdale, so that said Rosalie B. Bloomingdale at all times receives a net of $72,000 per annum." Upon such decree of construction, which has become final, the first wife made her election.

It is claimed by the widow that by such an election the first wife lost any priority in the distribution of testator's estate which she might have received under the separation agreement as a creditor had such election not been made. We think that such was not the intent of the testator nor does it conform to the law. We are engaged in the construction of the will but the agreement furnishes the key for its construction. The separation agreement was for her maintenance and support. The debt of testator was not dischargeable in bankruptcy (*Matter of Ridder*, 79 Fed. Rep. [2d] 524). As such creditor she was preferred over general legatees or annuitants. Although the testamentary annuity might be held, generally, to be the price paid for her claim (*Cole* v. *Niles*, 62 N. Y. 636), the testator saw to it that she should not receive less by taking under the will than she would have received under the agreement; there was no provision that she should receive exactly the same. Nor did the will provide that election to take the testamentary annuity should effect a satisfaction of the

*debt.* Whether it amounted to more than the claim is immaterial *(Matter of Smallman,* 138 Misc. Rep. 889). The will and codicil indicate a determination on the part of the testator that, under no contingency, should she receive less than $6,000 per month net and that if the income from the two trusts should be insufficient at any time, the deficit should be made up from income or from principal, if necessary, of Trust C — the residuary estate. To that extent, at least, he subordinated his second wife in participation in income or principal of his estate. We thus conclude that Trusts A-1 and A-2, for the benefit of the former wife, are preferred to Trust C for the benefit of the widow both as to income and principal. Under the circumstances in this case there is no presumption arising from equitable considerations, sometimes indulged, that the election of the first wife to take under the will (See 40 Cyc. p. 1885 *et seq.* and *Caulfield* v. *Sullivan,* 85 N. Y. 153) completely wiped out her preferred status.

It is asserted that circumstances have arisen which would require a practical construction contrary to the one which we deem imperative. Such a claim overlooks the settled law that the courts are not concerned with the writing of a new will for the deceased but rather with bringing about the result intended by the testator *(Herzog* v. *Title Guarantee & Trust Co.,* 177 N. Y. 86, 92), whatever may be the consequences resulting from conditions arising after his death *(Morris* v. *Sickly,* 133 N. Y. 456, 460). A construction of the will requires the holding that the widow was by intention of the testator and in legal effect a residuary legatee, and as such she must be subordinated, so far as may be necessary, to the general legacies as provided for out of the gross residuary estate *(Buffalo L., T. & S. D. Co.* v. *Leonard,* 154 N. Y. 141, 146; *Page* v. *Rouss,* 86 W. Va. 305, 312).

No inequity results from the construction made. At the respective dates on which the will and codicil were

made and the testator died, the property of the deceased was of sufficient size and earning capacity to produce easily in excess of the amounts required to set up the trust for the son and additionally provide $72,000 net per year for each of the two women. It appears on the accounting proceedings and is a matter of record in this case that the net worth of the estate at the date of the will was $9,286,070.15; at the date of the codicil, $8,355,297.67, and at the date of the death of the deceased, $8,835,866.47. We may impute to the deceased from all the facts and circumstances an expectation on his part that such a status would continue after his death. It will thus appear that after satisfying the general and specific legacies, including the trusts provided for the benefit of the first wife and son, the net residuary estate falling into Trust C consists of nearly two-thirds of the entire estate. The testator, therefore, found no difficulty in providing, first, for a net income of $6,000 per month for his former wife and, secondly, a like sum for his widow.

The trust for the son (Trust B) is to be set up and administered as a separate and distinct trust, clearly severable from all the other trusts provided by the testator. By the express terms of the will, securities sufficient to provide a net annuity of $72,000 for the benefit of the first wife are directed to be " set aside in a separate trust fund." Its separability from the residuary estate (Trust C) is affected by the codicil only to the extent that income and corpus of Trust C must first be used to make up deficits of income in Trusts A-1 and A-2. We think the will, coupled with the construction first placed on the will by the Surrogate affecting the payment of the taxes upon the annuity to the former wife, requires that the executors and trustees set up separate trusts sufficiently large to provide for payment of the annuity, taxes thereon and costs of their administration, resort being left to Trust C for deficits of income to meet those requirements. We do not share with the executors

the fear they have expressed that insurmountable difficulties of administration or unjust enrichment to the son must result.

The mandate of the testator to set up the trusts provided for in the will and codicil should have been long since complied with. Giving effect to the construction by the Surrogate with reference to payment of taxes on the income to the first wife and to the facts that there has been no issue of deceased by his second wife, that neither the son nor the first wife have contested the will, that the first wife has elected to take under the will and not to enforce the agreement between her and the testator, that the son and the two women were living at the death of deceased and are still living, and to the intent and legal effect of the provisions of the will and codicil, we summarize and conclude that Bloomingdale has directed the segregation of the assets of his estate and the disposition of his gross residuary estate as follows:

(1) Into Trust B, assets having a market value of not less than two million dollars. The net income thereof is to be paid to Donald during his lifetime. Five hundred thousand dollars of the corpus of this trust fund is to be paid to Donald on or before he shall reach the age of thirty-five years. The remainder of the corpus is to be paid to the children (not adopted) of Donald at his death but, if he should leave no such surviving children, then such remainder shall fall into Trust C.

(2) Into Trusts A-1 and A-2, assets separately which will produce annual incomes sufficient to pay to the first wife for life the sums of $66,600 and $5,400 per year in equal monthly installments plus income taxes thereon and to provide for each the expense of administering the trust, and will, additionally, meet all reasonable contingencies. In the event there shall be deficit in income from either trust to meet its income requirements, resort is to be had to income or, if necessary, to principal of Trust C, in preference to participation therein by the second wife, but if there should be a surplus of income

from Trusts A-1 and A-2, such surplus is to be paid to the second wife. Upon the death of the first wife, the net income of Trust A-1 is to be paid to the second wife for life and of Trust A-2 to Philipine Banner for life. The corpus of each trust, to the extent required to produce the income requirement only, upon the death of the last life beneficiary, is to be paid to Donald, if living; if not living, to his issue; if there be none, to the last contingent residuaries named in the fifth clause of the will of deceased. Corpus not required to produce income falls into the residuary estate (Trust C).

(3) The residue of the estate into Trust C. After the payment from the income thereof or from principal, if necessary, to meet deficits of income to meet the requirements of Trusts A-1 and A-2, there is to be paid all remaining income therefrom to the second wife for life; if such remaining income is less than $72,000 per annum, any deficit is to be made up from principal. Upon the death of the second wife, such remaining income is to be paid to Donald for life. Upon the death of the surviving life beneficiary, the corpus is to be paid to the issue of Donald; if there should be no such issue, to those to whom the second wife bequeaths it in her will, but if she makes no such bequests, then it passes under the fifth clause of his will to his last contingent residuary legatees, viz., to Trustees of the Cathedral of St. John the Divine in the City of New York and the Federation for the Support of Jewish Philanthropic Societies in the City of New York.

The order of the Appellate Division and the decrees of the Surrogate's Court should be modified in accordance with this opinion and, as so modified, affirmed, with costs to all parties appearing payable out of the net residuary estate.

CRANE, Ch. J., LEHMAN, O'BRIEN, HUBBS, LOUGHRAN and FINCH, JJ., concur.

Ordered accordingly.